758 So.2d 730 (2000)
Trishia WOLFE, Appellant,
v.
Elizabeth NAZAIRE, Appellee.
No. 4D99-0540.
District Court of Appeal of Florida, Fourth District.
May 10, 2000.
*731 Manuel A. Fernandez, Miami, for appellant.
Gary A. Esler of Esler & Lindie, P.A., Fort Lauderdale, for appellee.
SHAHOOD, J.
This is an appeal from an order taxing attorney's fees in favor of appellee, Elizabeth Nazaire, following this court's mandate in Wolfe v. Nazaire, 713 So.2d 1108 (Fla. 4th DCA 1998) (Wolfe I). We hold that the trial court abused its discretion in *732 enhancing the fee it awarded where it failed to state the grounds for enhancement and additionally did not have sufficient evidence before it to support such an award. We accordingly reverse and remand with directions for the trial court to enter an order on fees in favor of appellee in the amount of $2,500.00.
As stated above, this is the second appeal in this case. In the first case, appellant, Trishia Wolfe, was the plaintiff below in a negligence action which resulted in a defense verdict. She appealed the trial court's order awarding appellee, Elizabeth Nazaire, $7,500 in attorney's fees. Appellant argued that the trial court could not award attorney's fees to appellee in an amount higher than that provided for in appellee's contract with her attorney. In Wolfe I, 713 So.2d at 1108-09, this court held that a trial court could award attorney's fees that exceeded the hourly wage the attorney and client agreed upon, where the contract addressing attorney's fees stated that compensation would be either a specified hourly wage or an amount awarded by the court under the prevailing party statute, whichever yielded the higher fee.
This court further held that the trial court, in arriving at the $7,500 attorney's fee figure, erred in failing to set out in the order the hours reasonably expended and the reasonable rate to be applied to those hours. See id. at 1109. As such, the matter was reversed and remanded "for the trial court to determine the amount of attorney's fees to be awarded after making the required findings." Id.
Upon remand, a hearing was held before the trial court on appellee's motion to determine the amount of attorney's fees, pursuant to appellate opinion and mandate. No testimony was taken at the hearing. Rather, the trial court relied upon the expert affidavits previously submitted and argument by the parties. Nevertheless, after reviewing the file and expert affidavits, the trial court found that defense counsel reasonably expended twenty-five hours at a reasonable hourly rate of $100 for a "loadstar" [sic] fee in the amount of $2,500. The court then determined that an enhancement of 2.0 was appropriate, thereby adding $5,000 to the lodestar fee for a total attorney's fee award of $7,500.
Appellant suggests that the trial court exceeded the scope of this court's mandate by including a contingency fee multiplier in its award of attorney's fees. In Wolfe I, appellant objected to the trial court's award of $7,500 to appellee on the grounds that the court's award could not exceed the hourly rate agreed upon in the contract between appellee and her attorney. This court, relying upon Kaufman v. MacDonald, 557 So.2d 572, 573 (Fla.1990), held that a trial court could award attorney's fees that was higher than the hourly rate set out in the contract, where the contract provided that the attorney's compensation would be either by a specified hourly rate or by an amount awarded by the court under the prevailing party statute, whichever yielded the higher fee. The contract in Wolfe I provided for a fee based on an hourly rate of "$85 or whatever may be awarded by the trial court." See Wolfe I, 713 So.2d at 1108. Based on the wording of the contract, this court held that the trial court was not bound by a "cap."
The court in Wolfe I further stated that the trial court failed to set out in the order the hours reasonably expended and the reasonable rate to be applied to those hours. In remanding, the court directed the "trial court to determine the amount of attorney's fees to be awarded after making the required findings." Id. at 1109.
It is mandatory that a trial court's order awarding attorney's fees set forth findings as to the time reasonably expended, the hourly rate, or other factors, if any, considered. See Guardianship of Halpert v. Rosenbloom, 698 So.2d 938 (Fla. 4th DCA 1997).
When an order or judgment is reversed and remanded, the lower tribunal has authority to conduct further proceedings in conformity with the instruction of *733 the appellate court. See Collins v. State, 680 So.2d 458, 459 (Fla. 1st DCA 1996). A reversal and remand with general directions for further proceedings vests the trial court with broad discretion in directing the course of the cause. See id. Where, however, the remand instruction is specific, it is improper to exceed the bounds of that instruction. See id.
It was clearly within the trial court's discretion to enter an award in an amount higher than the agreed upon hourly rate set forth in the contract. However, there is a question as to whether there was sufficient evidence to support an enhancement through the use of a multiplier.
Appellant argues that there is no competent substantial evidence in the record to support the trial court's application of a contingency fee multiplier. While there is no transcript of the attorney's fee hearing in this case, that fact does not preclude appellate review where the error appeared on the face of the order being appealed. See Guardianship of Halpert, 698 So.2d at 939; Whelan v. Whelan, 736 So.2d 732 (Fla. 4th DCA 1999)(absent a trial transcript, District Court of Appeal may reverse only if an error of law appears on the face of the final judgment).
It is well-settled that in determining the proper amount of attorney's fees based on a contract, the trial court must set forth specific findings as to the hourly rate, number of hours reasonably expended, and appropriateness of the reduction or enhancement factors. See Giltex Corp. v. Diehl, 583 So.2d 734 (Fla. 1st DCA 1991)(citing Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1151 (Fla.1985)). In calculating reasonable fees, the trial court must determine the number of hours reasonably expended and a reasonable hourly rate, then multiply the two to arrive at the "lodestar" amount. See Bell v. U.S.B. Acquisition Co., 734 So.2d 403, 406-07 (Fla.1999). After calculating the lodestar, the court may add or subtract from the fee based upon a contingency risk factor and the results obtained. See id. at 407. Although the trial court is precluded from considering the contingent nature of the fee when determining a reasonable hourly rate, this factor should be taken into account when determining whether a multiplier is appropriate. See id.
A court may consider applying a multiplier as a "useful tool" in determining a reasonable fee if the evidence in the record establishes that: (1) the relevant market requires a contingency multiplier to obtain competent counsel; (2) the attorney was unable to mitigate the risk of nonpayment in any other way; and (3) use of a multiplier is justified based on factors such as the amount of risk involved, the results obtained, and the type of fee arrangement between attorney and client.
Bell, 734 So.2d at 412 (citation omitted). If the court decides to adjust the lodestar, it must state the grounds on which it justifies the enhancement or reduction. See Giltex; see also Gonzalez v. Veloso, 731 So.2d 63, 64 (Fla. 3d DCA 1999).
In this case, while there is no transcript of the fee hearing, it is clear from the face of the order, that the trial court did not explain its reasons for the use of a multiplier. In addition, the order taxing fees specifically states that the court heard argument of the parties and reviewed the affidavits previously submitted to the court in the prior hearing on fees. The affidavits referred to neither request a multiplier nor provide support that a contingency risk factor was involved.
We accordingly reverse and remand with directions to enter an order on fees in favor of appellee in the amount of $2,500.00.
REVERSED AND REMANDED WITH DIRECTIONS.
HAZOURI, J., concurs.
FARMER, J., concurs specially with opinion.
*734 FARMER, J., concurring specially.
I concur in the result but not in the opinion. The failure to seek a contingency risk multiplier or to support a multiplier with evidence is irrelevant. If the moving party had sought a multiplier and had offered some evidence, would we affirm? I really don't think we could have done so even then.
The essential problem with a multiplier in this case is the lack of any contingency. There was no "risk of nonpayment"[1] in the fee agreement between defendant and her lawyer. This was an agreement for the defendant to pay specified hourly rates for the lawyer's time spent defending the lawsuit.[2] The duty of payment was in no way contingent or dependent on how the lawsuit turned out. She owed fees to her lawyer regardless of whether she won or lost. While the amount might change, there was no chance of not being entitled to a fee.
A "risk of nonpayment" is essential to a contingency risk multiplier. A claim for a multiplier essentially fails "to state a cause of action" unless the fee is in some way dependent on the outcome of the case that there was some risk that a fee would never be due. It is the risk that no fee will ever be due, even though substantial work is performed, that gives rise to the recognition that an enhancement may be appropriate. As the supreme court explained:
"there are two distinct types of contingencies which courts have used interchangeably. The first type, identified as a `contingency adjustment,' occurs when a fee-authorizing statute is construed to allow an enhancement of the lodestar figure because of the risk of nonpayment. The amount involved is not considered a significant factor. The second type, known as a `contingency fee arrangement,' concerns those cases where the amount involved is important and includes those agreements typically entered into between an attorney and his client in personal injury litigation, where the attorney receives an agreed-upon percentage of the amount of damages recovered. These two concepts are related only in that both involve the risk of nonpayment." [e.s., f.o.]
Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828, 833 (Fla.1990). Indeed one of the factors in considering a multiplier is "whether the attorney was able to mitigate the risk of nonpayment in any way...." 555 So.2d at 834.
Therefore the award of a contingency risk multiplier in this case is in error because there was no contingency in the fee agreement, no chance that a fee might never be due. Consequently, while I join in the reversal, I am unable to endorse the views of the majority.
NOTES
[1] See Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828, 833 (Fla.1990) ("both [types of contingencies] involve the risk of nonpayment." [e.s.]). Fee agreements involving contingencies have a stated uncertainty as to whether a fee will ever be due: if the contingency occurs, the client owes a fee; if it fails to occur, then no fee is due. "Risk of nonpayment" thus refers to whether a fee will ever be legally due, not to the possibility that the client may breach and fail to pay a fee that is legally due.
[2] Defense counsel did not file a copy of any contingency fee contract. See R. Reg. Fla. Bar 4-1.4(f)(2) (every lawyer who enters into contingency fee agreement shall do so only in writing signed by client and all lawyers participating in fee). In a letter explaining his fee, defense counsel said:

"The file was handled on a minimal hourly rate of $85.00 per hour. The fee arrangement is for that hourly rate, or `whatever may be awarded by the Trial Court, whichever is higher.'" [e.s.]
There can be no doubt that the fee was not based on any contingency. Instead it was a fixed fee for an hourly rate, either at $85/hour as stated in the letter or a higher rate set by the court.