851 So.2d 239 (2003)
Elwira TARNAWSKI, Appellant,
v.
Janusz TARNAWSKI, Appellee.
No. 4D01-4728.
District Court of Appeal of Florida, Fourth District.
July 30, 2003.
Rehearing Denied August 21, 2003.
*240 Isabel Julia-Miles of Isabel Julia-Miles, P.A., Boca Raton, for appellant.
Robert Garven, Coral Springs, for appellee.
WARNER, J.
In the final judgment of dissolution of marriage, the trial court denied alimony in a long term marriage, ordered the marital home to be sold, imputed income to the wife, and denied attorney's fees to the wife. Because the trial court imputed income to the wife at a level of income unsupported by the evidence and in excess of any amount the wife had earned in the past, we reverse. This error also requires the court on remand to review all other aspects of the final judgment.
The husband and wife were married in Poland in 1979 and have two children, one of whom is still a minor. The wife is forty-eight and has completed two and a half years of college in nursing in Poland. The husband is a field support engineer at Siemens, and his job requires him to travel frequently. At the time of the divorce, he earned $51,300 plus some bonuses.
The husband left Poland and moved to Florida in 1987. After two years, he sent for the wife and son, requiring the wife to give up her medical career to follow the husband. When she moved to Florida, the wife worked as a housekeeper but stopped soon after she had the couple's second child. The parties moved frequently throughout the United States as the husband pursued various job opportunities. Although the wife wanted to study to become a nurse in the United States, she lacked the time given her family responsibilities and the frequent moving.
The family moved back to Florida in 1995 and bought a home in Boca Raton for $152,000. Throughout this time, the wife continued to be the primary caretaker for the children and the home, as the husband was frequently traveling. The parties offered conflicting evidence regarding the wife's work history in Florida. The husband testified that the wife again worked as a full-time housekeeper for an invalid's family in Fort Lauderdale for three years until the invalid died. She earned $600 per week plus additional monies serving at evening parties. After the invalid died, the wife worked again as a housekeeper. *241 According to the wife, however, she only worked part-time for the invalid for about a year total. Most of that time she served as a nurse's aid, tending to his medical condition, including his medications and diet. After he died, she performed the same tasks for another person, making $15 per hour and working two to three times a week.
She claimed that after her second job ended, she was unable to continue working because of her back problems which had begun in Poland where she had surgery. She testified that she is currently being seen by three doctors and needs more surgery. Again, the husband contested this evidence, stating that the doctors in Poland determined she had made a complete recovery from her back problems. He claimed that only after he filed for divorce did the wife start complaining that her back prevented her from working. The husband hired a private investigator to follow the wife and record her activities. During his surveillance, the investigator observed her entering two different apartment complexes where she remained in the apartments for approximately two to three hours. She visited the apartments on the same day and hour two weeks later. Based upon this evidence, the former husband suggested the former wife was still cleaning houses, but the wife indicated that she was visiting friends.
According to the wife, the husband left his employment with Siemens in April 1999 unbeknownst to her and moved to Germany with another woman, who also was with Siemens and had been relocated to Germany. To fund this trip, the husband withdrew approximately $78,800 from his 401k funds. He incurred a $10,500 tax liability as a result. The wife did not know of his whereabouts for six months until he finally sent her $500 for child support. While he was in Europe, the wife had to borrow money from friends and relatives. The husband claims that he gave the wife a power-of-attorney and told her to sell his things to help support the family. Eventually, he came home and asked the wife to help him obtain re-employment with Siemens, which she did.
At trial the wife requested permanent alimony, child support, exclusive use of the marital home until the child reached majority, half of the funds that were in husband's 401k before he dissipated it, a portion of the husband's pension, and attorney's fees. In its final judgment, the trial court found the wife "healthy as a horse" and "perfectly capable of working." It further found that the wife had worked full-time as a housekeeper during the marriage. Thus, based upon the hourly rate she received from her part-time job in 1998 of $15, the court imputed income to her at $20 per hour or $800 per week. Based upon this level of income, the court found that she would be able to sustain her standard of living without alimony. The court denied the wife exclusive possession of the marital home, finding that it was not financially feasible. To compensate the wife for her share of the husband's 401k plan, the court ordered the marital home be sold and awarded the net proceeds entirely to the former wife. Alternatively, the court awarded the wife sole ownership of the home on the condition that she refinance the mortgage and remove the husband from any financial obligation, giving her sixty days in which to refinance. The court ordered child support of $300.00 per month based upon the husband's income and imputed income to the wife of $2,771 per month. It vacated the income deduction order and required each party to pay its own attorney's fees.
A linchpin of the court's judgment relates to the imputing of income to *242 the wife in the amount of $800 per week. Based upon that calculation, the court denied permanent alimony and reduced the amount of child support being paid by the husband. Section 61.30(2)(b), Florida Statutes (1999), requires the court to impute income for purposes of child support to a spouse who is voluntarily underemployed or unemployed "unless the lack of employment is the result of the spouse's physical incapacity or other circumstances beyond the parent's control." Shrove v. Shrove, 724 So.2d 679, 682 (Fla. 4th DCA 1999). In determining whether to award alimony, the court should consider, inter alia, the financial resources of the parties and all sources of income available to each party. See id.; also § 61.08(2)(d) & (g), Fla. Stat. (1999). If the marital relationship included each spouse working, then the court should impute income in accordance with the spouse's ability and history. See Boynton v. Boynton, 636 So.2d 53, 56 (Fla. 2d DCA 1994).
In determining the amount of income to be imputed to a spouse, section 61.30(2)(b) sets forth several factors that a trial court shall consider:
In the event of such voluntary unemployment or underemployment, the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community....
The trial court's findings regarding imputation of income must be supported by substantial competent evidence. See Burkhardt v. Bass, 711 So.2d 158, 160 (Fla. 4th DCA 1998). However, it is error for the trial court to impute income to a spouse in an amount higher than the spouse has ever historically earned, absent special circumstances. See Stein v. Stein, 701 So.2d 381, 381 (Fla. 4th DCA 1997); accord Stodtko v. Stodtko, 636 So.2d 814, 815 (Fla. 3d DCA 1994). In Stodtko, the court held it was error to impute income at $10 per hour, where the most the husband had ever earned before he voluntarily left his employment was $7.61 per hour. 636 So.2d at 814-15.
In this case, the court found that the wife was capable of working and then imputed income to her at $20 per hour for a forty hour work week when the most she had ever made before was $15 per hour, and there was no evidence that work was available for forty hours per week. In the job paying $15 per hour, she worked only part-time. Even the investigator who followed the wife could account for only six hours in which she was at apartments where she might have been cleaning. Moreover, the court had no evidence of prevailing wages in the community for household work or availability of positions. The court's imputing of income was based not on substantial competent evidence but on conjecture. We therefore reverse. Likewise, we also reverse the denial of permanent alimony and the award of child support for reconsideration upon a re-evaluation of the wife's ability to contribute to her own support and that of the child.
The court's denial of exclusive use and possession of the home also is tied to the parties' respective financial positions. Although generally exclusive use of the marital home is awarded to the party having primary physical custody of a minor child, see Zeller v. Zeller, 396 So.2d 1177, 1179 (Fla. 4th DCA 1981), compelling financial reasons may necessitate the sale of the home. See Scott v. Scott, 408 So.2d 1089, 1090 (Fla. 3d DCA 1982). On remand, the court will have to reconsider this issue, as well as the equitable distribution, depending upon the court's valuation of the marital assets. Based upon the reversal of the financial awards, we also *243 reverse the denial of attorney's fees, leaving that issue for redetermination upon remand.
Finally, the court erred in not ordering an income deduction order for the husband's child support obligation. Such an order is statutorily required. See § 61.1301(1)(a), Fla. Stat. (1999).
Reversed and remanded for further proceedings in accordance with this opinion.
STEVENSON and HAZOURI, JJ., concur.