902 So.2d 947 (2005)
Shirley DORSETT, Appellant,
v.
Granvill DORSETT, Appellee.
No. 4D04-74.
District Court of Appeal of Florida, Fourth District.
June 8, 2005.
*949 Troy W. Klein of Troy W. Klein, P.A., West Palm Beach, for appellant.
Donald C. Dowling of Spinner, Dittman, Federspiel & Dowling, LLP, Delray Beach, for appellee.
POLEN, J.
This appeal arises from a Final Judgment of Dissolution of Marriage. For the reasons explained herein, we hold that the trial court erred by adopting the parties' purported oral agreements regarding the use and possession of the former marital home and the former husband's child support obligation. The trial court also erred by distributing the parties' assets without complying with the requirements of section 61.075, Florida Statutes. We find no error, however, in the trial court's requirement that the former wife contribute toward the mortgage during her period of exclusive use and occupancy of the former marital home. Accordingly, we affirm in part, reverse in part, and remand.
The parties were married in 1993 and have one child, born on June 7, 1992. The former husband was and remains the sole owner of the marital home, which was his premarital property.
After the parties filed for dissolution, they were referred to mediation, after which a Mediation Conference Report was issued on July 9, 2003, stating that the parties were still negotiating and may return to mediation.
Subsequently, on November 10, 2003, the former husband filed a Motion to Enforce Settlement Agreement, stating that:
1. On November 3, 2003, at the office of the Wife's attorney, the parties and their attorneys settled, resolved and agreed upon all (100%) of the issues in this case.
2. The Wife does not wish to abide by this agreement.
3. The Agreement was fair and reached fairly.
*950 There is no purported "Settlement Agreement" included in the record below and it is not specifically referred to by the trial court in the Final Judgment of Dissolution of Marriage. The former husband admits as much in his answer brief, stating that "[b]ecause there was no signed marital settlement agreement, the trial judge laboriously and carefully reviewed and set forth the agreements the parties had orally reached, as they informed the trial judge."
A contested Final Hearing took place on November 24, 2003. Since no court reporter was present, no transcript of the proceeding is available.[1] The Final Judgment states that the trial court heard testimony regarding the "partial agreements to certain aspects of this case which are approved by the Court and included in this Final Judgment." The exact nature of these purported "partial agreements" is unclear in that they apparently were not reduced to writing nor read into the record.[2]
The trial court's Final Judgment comes to the appellate court "with a presumption of correctness and cannot be reversed or set aside absent a showing that the court abused its discretion or erroneously applied a rule of law." Howard v. Howard, 467 So.2d 768, 771 (Fla. 1st DCA 1985). Where an error of law appears on the face of the order being appealed, the lack of a trial transcript does not preclude appellate review. Wolfe v. Nazaire, 758 So.2d 730, 733 (Fla. 4th DCA 2000). Furthermore, "[e]ven when no trial transcript is provided to the reviewing court, `[f]ailure to make sufficient findings regarding value of property and identification of marital assets and debts constitutes reversible error and requires remand for appropriate findings to be made.'" Id. (internal citations omitted).[3] In the present case, appellate review is appropriate because various errors of law appear on the face of the Final Judgment.
First, we hold that the trial court erred in adopting the parties' purported oral agreement regarding the use and possession of the former marital home. Under the Final Judgment, exclusive use and possession of the marital home will terminate on June 7, 2009, upon the minor child reaching the age of seventeen. The former wife argues that she and the minor child will be forced to vacate the home, and possibly to change school districts, notwithstanding the fact that the child will not have attained the age of majority and *951 most likely will be between her junior and senior years of high school.
It is incumbent upon the trial court to ensure that any purported agreement or arrangement between a child's parents does not shortchange the child's interests. "It is undisputed, and should be indisputable, that a trial court's responsibility to the child cannot be abdicated to any parent, any expert. That heavy responsibility mandates that a court is not bound by any agreement between parents." Lane v. Lane, 599 So.2d 218, 219 (Fla. 4th DCA 1992); see, e.g., Sotoloff v. Sotoloff, 745 So.2d 959 (Fla. 4th DCA 1998) (holding that a custodial parent may not contract away a child's right to support).
With regard to exclusive possession of the marital home, this court has held:
[a]lthough the failure to award exclusive possession of the marital home unto the custodial parent until all of the children attain majority or become emancipated would not always constitute error, such awards are so frequently ordered that they have become a generally accepted principle of the law of divorce.
Zeller v. Zeller, 396 So.2d 1177, 1179 (Fla. 4th DCA 1981) (reversing and remanding case to the trial court for the purpose of "entering a final judgment awarding the wife exclusive occupancy of the marital domicile until the youngest of the two children in her custody attains majority or otherwise becomes emancipated"); see also Robinson v. Robinson, 340 So.2d 935, 936 (Fla. 4th DCA 1976)("The trial court granted to appellee-wife the possession and occupancy of the marital home until the youngest child of the parties is eighteen years of age. Such an award is proper because it is in the nature of maintenance as an incident of child custody.").
In this case, the trial court deviated from "a generally accepted principle of the law of divorce" by forcing the minor child's relocation at age seventeen during the summer before her senior year of high school, rather than when she reaches majority. Moreover, the trial court failed to provide any findings to justify or otherwise explain how this requirement would be in the best interest of the child. Zeller, 396 So.2d at 1179. Instead, the Final Judgment simply states:
9. By agreement, the Husband is and shall remain the sole owner of the home.... However, the Wife shall be entitled to the exclusive use and possession of home until the 17th birthday of the minor child, ..., at which time the Husband shall become entitled to the exclusive use and possession of said residence and the Wife and minor child shall thereupon vacate same.
The former husband claims the parties agreed the former wife and minor child would vacate the home on the child's seventeenth birthday and, thus, her "claims of forcing the child at age seventeen out of the house are totally imaginary." Such argument is fundamentally inadequate because, as explained above, "a court is not bound by any agreement between the parents." Lane, 599 So.2d at 219. Additionally, the former husband's Answer Brief is self-contradictory as to whether the parties ever even formed the purported agreement regarding the length of time the former wife and minor child would remain in the marital home. First, the former husband's brief states:
Both counsel informed the trial court that all issues had been resolved by the parties except one, which related to the length of time the Former Wife and minor child would remain in the Former Husband's home, a non-marital asset belonging to the former husband. It was this issue that the parties agreed to submit for decision by *952 the trial judge, informing the trial court that all other issues had been resolved by the draft Marital Settlement Agreement.
(Emphasis added.) But later, in the same brief, the former husband states:
At the final hearing, counsel for both parties informed the trial court that the parties had reached agreement on all issues except one issue to be tried by the court, namely, that set forth in paragraph 8 of the Final Judgment pertaining to how mortgage payments were to be made with assurance that they be made, since the [former wife] and minor child were to remain in the [former husband]'s house which was under mortgage.
(Emphasis added.)
Even without access to a transcript from the proceeding below, it is evident that both of these statements in the former husband's Answer Brief cannot be true. He claims twice that there was only one unagreed issue to be tried by the court, but first he states that it was "the length of time the Former Wife and minor child would remain in the Former Husband's home" and then he states that it was "how mortgage payments were to be made." Thus, the record does not support the former husband's contention that the former wife agreed to vacate the former husband's home on the minor child's seventeenth birthday.
Moreover, regardless of whether the parties agreed upon the timeframe for turning over the exclusive use and occupancy of the marital home, the trial court has an independent "responsibility to the child." Lane, 599 So.2d at 219; Sotoloff, 745 So.2d 959. Although the trial court is afforded some discretion in determining the length of exclusive use and occupancy, we hold that there must be compelling reasons to order the former wife and minor child to vacate upon the child's seventeenth birthday rather than when she reaches majority or graduates from high school, whichever is later. Here, by failing to make any findings in the Final Judgment to support or explain why the mother and minor child must vacate upon the seventeenth birthday of the child, the trial court did not fulfill its responsibility to ensure that the arrangement does not harm the interests of the child. Therefore, we remand this case to the trial court for a more thorough determination regarding the timing of the termination of the award of exclusive use and occupancy of the marital home. The trial court may take additional testimony or rule on the record, as it deems appropriate.
Second, we affirm the trial court's ruling that the former wife must contribute toward the mortgage during the period of exclusive use and occupancy of the former marital home. The Final Judgment operated as the former wife's conveyance of the marital home to the former husband, conveying the entire right, title, and interest in the home. The Final Judgment also requires the former wife to pay the difference between the mortgage and the former husband's child support obligation during her period of exclusive use and occupancy. Both parties agree that this mortgage payment provision was the creation of the trial court.
The former wife argues that this mortgage payment provision operates to make the former wife a tenant and the former husband a landlord. She also asserts that the trial court made her a tenant on very unfavorable terms because the Final Judgment requires her to pay one-half of any repairs in excess of $300 that are required during her occupancy. She claims that the former husband has a judicially created incentive to discourage her from moving *953 because he "would lose his court ordered tenant that is required to contribute toward major repairs for a property that she can no longer claim an interest in."
While an award of exclusive possession of the marital home unto the custodial parent can be "in the nature of maintenance and support," Zeller, 396 So.2d at 1179, a grant of exclusive use and possession of the former marital home can also be an "incident pertaining to child custody," particularly if the grant provides that it is to last only until the children in the wife's custody reach a certain age, marry, or die. Cannon v. Morris, 407 So.2d 372, 373 (Fla. 1st DCA 1981).
Here, the Final Judgment does not support the former wife's stance that the grant of exclusive use of the home until the child reached a certain age was intended as a means of support for the former wife, who the court noted had a higher net monthly income than the former husband. The trial court ordered the husband to pay monthly child support but did not make any findings related to spousal support. The grant of exclusive use of the home to the custodial parent until the child turns seventeen appears to be directed at preserving the stability of a residence for the minor child. Based on the foregoing, we hold that the trial court did not abuse its discretion in requiring the former wife to contribute toward the monthly mortgage while she lives there, because the home belongs solely to the former husband, who will be precluded from occupying it for several years. See Cooper v. Cooper, 760 So.2d 1048, 1049 (Fla. 2d DCA 2000).
Third, we hold that the trial court erred in adopting the parties' purported oral agreement regarding the former husband's payment of child support. "Child support payments are for the benefit of the child, not the parent, and a recipient of support payments receives the monies not in his or her own right, but in trust for the child as the cestui que trust." Sotoloff, 745 So.2d at 962 (quoting Thompson v. Korupp, 440 So.2d 68, 69 (Fla. 1st DCA 1983)).
Here, the Final Judgment requires the former husband to make child support payments directly to the mortgage holder on his mortgage for the marital home. It also provides that he must make child support payments directly to the former wife upon the child's seventeenth birthday, i.e., upon the vacation of the home by the mother and child.
We hold that the trial court's determination of child support payments violates section 61.1301(1)(a), Florida Statutes, which provides in part: "Upon the entry of an order establishing, enforcing, or modifying an obligation for alimony, for child support, or for alimony and child support, other than a temporary order, the court shall enter a separate order for income deduction if one has not been entered." We have referred to this subsection as the "mandatory income deduction provision." Larsen v. Larsen, 854 So.2d 293 (Fla. 4th DCA 2003) (emphasis added). It is unambiguous from both the statutory language and its judicial interpretation that every child support order is to be accompanied by an income deduction order. Yet, in the instant case, the trial court established the former husband's child support obligation of $500 per month but failed to enter the required income deduction order, nor did it provide for payment directly to the wife for the child's benefit.
The former husband argues that income deduction was not yet appropriate. He contends that since he was to apply his child support payments to the mortgage on his home in which the former wife and the minor child would be living, the trial court complied with the statutory requirements *954 by determining that he did not have to make direct child support payments until the child's seventeenth birthday.
First, we note that the legislature did authorize some trial court discretion regarding the effective date of the income deduction orders, based upon a finding of good cause. According to section 61.1301(1)(c):
The income deduction order is effective immediately unless the court upon good cause shown finds that the income deduction order shall be effective upon a delinquency in an amount specified by the court but not to exceed 1 month's payment, pursuant to the order establishing, enforcing, or modifying the obligation. In order to find good cause, the court must at a minimum make written findings that:
1. Explain why implementing immediate income deduction would not be in the child's best interest;
2. There is proof of timely payment of the previously ordered obligation without an income deduction order in cases of modification; and
3. a. There is an agreement by the obligor to advise the IV-D agency and court depository of any change in payor and health insurance; or
b. There is a signed written agreement providing an alternative arrangement between the obligor and the obligee and, at the option of the IV-D agency, by the IV-D agency in IV-D cases in which there is an assignment of support rights to the state, reviewed and entered in the record by the court.
See also Gurene v. Gurene, 575 So.2d 291 (Fla. 1st DCA 1991) (reversing trial court's decision to defer entry of income deduction order for child support because trial court did not make requisite "finding of good cause"). In this case, even if the trial court had properly entered an income deduction order, it did not make the required written findings to justify departing from the immediate effectiveness of that required order. While the legislature did allow trial courts some discretion regarding the effective date of income deduction orders, it did not allow trial courts the discretion to simply fail to enter one at all. Therefore, we also remand this case to the trial court to enter an income deduction order and, if appropriate, to determine whether "good cause" exists to defer the effective date of that order.
Fourth, we hold that the trial court erred by not making written findings identifying and assigning values to the marital assets and liabilities, in violation of section 61.075, Florida Statutes. Section 61.075(3) provides in pertinent part:
(3) In any contested dissolution action wherein a stipulation and agreement has not been entered and filed, any distribution of marital assets or marital liabilities shall be supported by factual findings in the judgment or order based on competent substantial evidence with reference to the factors enumerated in subsection (1). The distribution of all marital assets and marital liabilities, whether equal or unequal, shall include specific written findings of fact as to the following:
(a) Clear identification of nonmarital assets and ownership interests;
(b) Identification of marital assets, including the individual valuation of significant assets, and designation of which spouse shall be entitled to each asset;
(c) Identification of the marital liabilities and designation of which spouse shall be responsible for each liability;
(d) Any other findings necessary to advise the parties or the reviewing court of the trial court's rationale for the distribution of marital assets and allocation of liabilities.
The instant case was a "contested dissolution action wherein a stipulation and *955 agreement has not been entered and filed." § 61.075(3), Fla. Stat. The Final Judgment states that "[t]his cause came to be heard for a contested Final Hearing" (emphasis added). Additionally, a review of the record reveals that there were no written stipulations entered or filed by the parties; the trial court stated that there were merely "partial agreements to certain aspects of this case." Therefore, the trial court was required to follow the instruction in section 61.075(3), as set forth above.
The Final Judgment identifies the marital home as the husband's nonmarital property. Additionally, it (1) designates each party's pension to that party; (2) designates the pre-marriage furniture and personal property in the marital home to the former husband and the post-marriage furniture and personal property in the martial home to the former wife; (3) designates ownership and debt to each party for his or her automobile; and (4) states that the parties have no joint debts and each party shall pay his or her own debts.
The Final Judgment does not make a single finding as to the valuation of any of the distributed marital property, contrary to the instruction of section 61.075(3)(b). This court has held that "[f]ailure to make sufficient findings regarding value of property and identification of marital assets and debts constitutes reversible error and requires remand for appropriate findings to be made." Whelan v. Whelan, 736 So.2d 732, 732; see, e.g., Reyes v. Reyes, 714 So.2d 646 (Fla. 4th DCA 1998). Therefore, we also remand this matter to the trial court to make the written findings § 61.075(3)(b) requires for purposes of facilitating meaningful review.
STEVENSON and GROSS, JJ., concur.
NOTES
[1] As we explain below, however, the lack of a transcript in this case does not preclude appellate review. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla.1979).
[2] The former husband's Statement of the Case and of Facts includes alleged facts from outside the record on appeal and attaches two "exhibits" not found in the record. We reject the former husband's "exhibits" and his unauthorized statement of evidence, which is in the form of a statement of the case and facts, because it relies upon documents not in the record and it was not agreed upon by the parties or approved by the trial court. See Hughes v. Enterprise Leasing Co., 831 So.2d 1240 (Fla. 1st DCA 2002)("As it is not a part of the record but merely attached to appellee's brief, this Court cannot review the document on appeal."); see also Burke v. Burke, 864 So.2d 1284, 1284 (Fla. 1st DCA 2004); Walt v. Walt, 596 So.2d 761 (Fla. 1st DCA 1992).
[3] But see Mathieu v. Mathieu, 877 So.2d 740 (Fla. 5th DCA 2004) (treating the lack of adequate findings as an unpreserved error unless previously brought to the trial court's attention); Broadfoot v. Broadfoot, 791 So.2d 584 (Fla. 3d DCA 2001) (holding a party cannot appeal inadequate findings in a dissolution case unless the alleged defect was brought to the trial court's attention in a motion for rehearing).