WELLS, Judge.
 

 This is a consolidated appeal from three post-dissolution orders. In Case Number 3D09-2161, Linda Roth appeals and Carlos Cortina cross-appeals from two orders distributing their assets and awarding alimony and attorney’s fees. In Case Number 3D10-198S, Cortina’s counsel appeals from an order denying his motion for leave to withdraw after he was discharged by his client.
 
 [1]
 
 We reverse all three orders and remand with instructions.
 

 Roth and Cortina were married in 1979; two now-adult children were born of this marriage. In September 2007, the marriage was dissolved in a bifurcated proceeding with the trial, court retaining juris
 
 *165
 
 diction over all issues regarding property distribution, alimony and related matters. In March of 2009, the court below entered an order awarding permanent periodic alimony to Cortina. Three months later, in July 20Q9, the court below, on a motion for rehearing, for the first time distributed the parties’ assets and then modified the amount of the permanent periodic alimony award. Some ten months after that, Corti-na’s counsel sought leave to withdraw, representing that he had not been paid “any” fees for his representation and that he had been discharged by his client. This motion was denied.
 

 Roth appeals from the March and July 2009 orders claiming the trial court erred (1)in failing to make specific findings to support the permanent periodic alimony award; (2) in failing to ascertain need on Cortina’s part; (3) in awarding alimony in an amount that exceeded Cortina’s demonstrated need and Roth’s ability to pay; (4) in determining the amount of alimony that Roth was to pay to assure insurance coverage to Cortina;. (5) in failing to identify or to distribute the parties’ liabilities; and (6) in postponing consideration of the parties’ claims for attorneys’ fees until some unspecified future time.
 

 Cortina cross-appeals from these same orders claiming the court below erred: (1) in failing to enforce its temporary fee award thereby depriving Cortina of adequate representation; (2) in failing to equitably distribute the parties’ assets; (3) in awarding an inadequate amount of alimony to him; and (4) like Roth, in postponing ruling on attorneys’ fees and costs.
 

 Case 3D09-2161
 

 We agree that the March and July 2009 orders must be reversed. As- this court and Florida Statute section 61.075(9) make clear, a “trial court is
 
 first
 
 to do the equitable distribution of assets, and once the assets have been equitably distributed, make a determination whether alimony should be awarded.”
 
 Acker v. Acker,
 
 821 So.2d 1088, 1092 (Fla. 3d DCA 2002) (en banc) (emphasis added);
 
 see
 
 § 61.075(8), Fla. Stat. (2009) (“After the determination of an equitable distribution of the marital assets and liabilities, the court shall consider whether a judgment of alimony shall be made.”). This is so that the court may consider these items when determining the financial resources available to each for the purposes of making an alimony award.
 
 See
 
 § 61.08(2)(d), Fla. Stat. (2009) (“In determining a proper award of alimony ... the court shall consider all relevant economic factors, including but not limited to ... the financial resources of each party, the nonmarital and marital assets and liabilities distributed to each.”). .
 

 In this case, alimony was awarded in March 2009, months before distribution was addressed (in July 2009), making it impossible to consider the impact any income or payments associated with the parties’ properties might have on the alimony award. Moreover, contrary to section 61.075, the distribution order (dated July 2009), while identifying four “remaining” assets owned by the parties, fails to value any of these assets or to identify, value, or distribute any liabilities associated with them
 
 [2]
 
 or otherwise:
 

 (3) ... The distribution of all marital assets and marital liabilities, whether equal or unequal, shall include specific written findings of fact as to the following:
 

 
 *166
 
 [[Image here]]
 

 (b)Identification of marital assets, including the individual valuation of significant assets, and designation of which spouse shall be entitled to each asset;
 

 (c)Identification of the marital liabilities and designation of which spouse shall be responsible for each Iiability[J
 

 § 61.075(3)(b), (c), Fla. Stat. (2009).
 

 The order is, in fact, devoid of any findings that would advise either of the parties or this court as to “the trial court’s rationale for [its] distribution of marital assets and allocation of liabilities.” § 61.075(3)(d), Fla. Stat. 2009.
 

 The March 2009 alimony award suffers from a similar infirmity. Section 61.08 provides that alimony awards must be supported by findings of fact relative to standard of living; age, physical and emotional condition of each party; financial resources; contributions to the marriage, and “all” sources of income:
 

 (1) ... In all dissolution actions, the court shall include findings of fact relative to the factors enumerated in subsection (2) supporting an award or denial of alimony.
 

 (2) In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
 

 (a) The standard of living established during the marriage.
 

 (b) The duration of the marriage.
 

 (c) The age and the physical and emotional condition of each party.
 

 (d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each.
 

 (e) When applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.
 

 (f) The contribution of each party to the marriage ...
 

 (g) All sources of income available to either party.
 

 The court may consider any other factor necessary to do equity and justice between the parties.
 

 § 61.08(1), (2)(a)-(g), Fla. Stat. (2009).
 

 While the March 2009 order identified some of these factors, it makes no findings to support the amount of alimony awarded. Indeed, the order suggests that Roth has no current ability to pay the amount awarded. As explained in
 
 Baptiste v. Baptiste,
 
 992 So.2d 374, 375 (Fla. 3d DCA 2008), failure to identify the factual basis for this and the distribution awards mandates reversal:
 

 The trial court was required to consider evidence and to make findings of fact in order to support the lump sum alimony award. § 61.08(1), Fla. Stat. (2008);
 
 Geoghegan v. Geoghegan,
 
 969 So.2d 482 (Fla. 5th DCA 2007);
 
 Esaw v. Esaw,
 
 965 So.2d 1261 (Fla. 2d DCA 2007);
 
 Fulmer v. Fulmer,
 
 961 So.2d 1081 (Fla. 1st DCA 2007). Section 61.08(1) specifies that “[i]n all dissolution actions, the court shall include findings of fact relative to the factors enumerated in subsection (2) supporting an award or denial of alimony.” (Emphasis provided). Similarly, section 61.075(3), Florida Statutes (2007), requires that an equitable distribution of marital assets include specific written findings of fact.
 

 See Dorsett v. Dorsett,
 
 902 So.2d 947, 950 (Fla. 4th DCA 2005) (“[E]ven when no trial transcript is provided to the reviewing court, ‘[fjailure to make sufficient findings regarding value of property and identification of marital assets and debts constitutes reversible error and requires remand for appropriate findings to be made.’” (quoting
 
 Wolfe v. Nazaire,
 
 758 So.2d 730, 733 (Fla. 4th DCA 2000)));
 
 Ondrejack v. Ondrejack,
 
 
 *167
 

 83
 
 9 So.2d 867, 870 (Fla. 4th DCA 2003) (“Section 61.08(1), Florida Statutes (2002) mandates that the court include findings of fact relative to the factors enumerated in subsection 2.”);
 
 Segall v. Segall,
 
 708 So.2d 983, 986 (Fla. 4th DCA 1998) (reversing permanent alimony award where, in the absence of sufficient factual findings concerning the statutory factors, it was impossible for the court to assess the reasonableness of the permanent alimony award). We must, therefore, reverse the March and July 2009 orders and remand to the trial court for findings consistent with the requirements of Chapter 61 of the Florida Statutes.
 

 We also reverse the trial court’s refusal to enforce an earlier order obligating Roth to pay $5000 in fees pendente lite to Cortina and its decision to defer ruling on Cortina’s request for a fee award at the conclusion of this action. The trial court’s failure to enforce its temporary fee award clearly deprived Cortina, mentally ill and not fully employed for many years, of the opportunity to fully present his case. On remand, the temporary fee order should be promptly enforced.
 

 As for the trial court’s decision to defer determining Cortina’s entitlement to a fee award at the termination of these proceedings, both Roth and Cortina agree that deferral was erroneous. While the order states that Cortina “likely will have a greater chance of success if [a fee hearing is] set [when the economy is better],” fee awards are best set at the time of the final judgment.
 
 See Derrevere v. Derrevere,
 
 899 So.2d 1152, 1153 (Fla. 4th DCA 2005) (finding that “the final judgment ... is the time when the ability to pay must be determined”).
 
 [3]
 

 Therefore on remand, the court below should immediately enforce payment of the temporary fee award. It shall also revisit both the alimony and equitable distribution awards and make written findings and adjudicate Cortina’s fee request.
 

 Case 3D10-1983
 

 We also reverse the order denying Cortina’s counsel’s motion to withdraw. Section 454.18 of the Florida Statutes provides that “any person, whether an attorney or not, ... may conduct his or her own cause in any court of this state.” § 454.18, Fla. Stat. (2010). While Cortina had been diagnosed with a psychiatric condition and had been hospitalized in the past, no showing was made below that he was not mentally competent or able to represent himself at any time during these proceedings. There also was no showing that: Cortina would not able to follow the rules and accord decorum to the court; that he would not obey any limitations imposed on communications; or that he presented a danger to Roth if he represented himself.
 
 See Abreu-Gutierrez v. James,
 
 1 So.3d 262, 266 (Fla. 4th DCA 2009) (concluding that if litigant could be shown to be willing to follow the rules and decorum of the court, he had the right to proceed pro se);
 
 Chauvet v. Estate of Chauvet,
 
 599 So.2d 740, 740 (Fla. 3d DCA 1992) (“In a civil action, a party has a right
 
 *168
 
 to terminate an attorney-client relationship at any time in favor of another attorney unless it is determined that the substitution would interfere with the efficient and proper functioning of the Court.”);
 
 Carr v. Grace,
 
 321 So.2d 618 (Fla. 3d DCA 1975) (citing section 454.18, and reversing an order requiring a civil litigant to appear through counsel). Under the circumstances, no justification existed for refusing to permit Cortina to proceed pro se.
 

 Moreover, counsel wanted to, and was fully justified in wanting to, terminate the relationship. As the record confirms, Roth was ordered to pay a temporary fee award to Cortina. She has never done so. The record also confirms that Cortina’s counsel has never been paid for any of his work and that there appeared to be no sign that an end to the litigation was imminent. As the court in
 
 Fisher v. State,
 
 248 So.2d 479, 486 (Fla.1971), observed:
 

 We hold that in a civil case any attorney of record has the right to terminate the attorney-client relationship and to withdraw as an attorney of record upon due notice to his client and approval by the court. Approval by the court should be rarely withheld and then only upon a determination that to grant said request would interfere with the efficient and proper functioning of the court.
 

 Under the circumstances, including the trial court’s own observations that “[t]he Court entered two orders requiring the Former Wife to pay suit monies and attorney’s fees to counsel for the Former Husband [and that she has] refused to comply with either order,” we conclude that requiring counsel to continue with his unwanted and uncompensated representation cannot be justified.
 
 [4]
 
 Accordingly, we reverse that order and remand for further proceedings in accordance with this opinion.
 

 [1]
 

 . While we are now advised that Mr. Cortina has withdrawn his discharge of counsel, we do not view this matter as moot.
 

 [2]
 

 . We note that in the March 2009 order .the trial court recognized that one of these assets, Roth’s real estate practice while virtually valueless, had "incurred many debts.” This asset and its liabilities were "awarded” to Roth but appear not to have been taken into consideration in distributing the other assets or in making the alimony award.
 

 [3]
 

 . That is not to say that Roth’s desire to provide for the parties' adult children should result in determining that she has no ability to provide either for the basic necessities of her former spouse or to pay his attorney’s fees.
 
 See Rey v. Rey,
 
 598 So.2d 141, 145 (Fla. 5th DCA 1992) ("There is no legal obligation to support the non-dependent adult children of the parties.
 
 Grapin v. Grapin,
 
 450 So.2d 853 (Fla.1984) (requiring divorced parents to support adult child while child in college when other parents are not so compelled would be denial of equal protection);
 
 Carter v. Carter,
 
 511 So.2d 404 (Fla. 4th DCA 1987) (parent has no legal obligation to support a child who has attained majority unless child is statutorily dependent).”).
 

 [4]
 

 . We find unpersuasive Roth’s argument that allowing counsel to withdraw would require her to deal directly with Cortina where: one, it is her non-payment of court ordered fees and costs which, at least in part, is cited as leading to counsel's request to withdraw; and two, the court retains the power to order and enforce limitations as to the nature of the parties’ interactions.