DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MARIANNE K. BRENNAN,**
Appellant,

v.

**DANIEL JOSEPH BRENNAN,**
Appellee.

No. 4D14-1363

[ January 27, 2016 ]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Amy Smith, Judge; L.T. Case No. 502010DR000678XXXXNB.

Jennifer S. Carroll of the Law Offices of Jennifer S. Carroll, P.A., Palm Beach Gardens, for appellant.

Martin L. Haines, III of Martin L. Haines, III, Chartered, Lake Park, for appellee.

TAYLOR, J.

The former wife appeals the Second Amended Final Judgment of Dissolution of Marriage Following Issuance of Mandate by the Fourth District Court of Appeal ("Second Remand Judgment"). We affirm in part and reverse in part.

This appeal arises out of proceedings on remand following this court's decision in *Brennan v. Brennan*, 122 So. 3d 923 (Fla. 4th DCA 2013) ("*Brennan I*"). In *Brennan I*, the former husband appealed a final judgment of dissolution as well as a post-judgment contempt order. While the former husband's appeals were pending in *Brennan I*, we relinquished jurisdiction so the trial court could amend the final judgment. The trial court then entered an Amended Final Judgment, attaching the equitable distribution schedule that was missing from the original final judgment.

The former husband's appeals were consolidated, and his Amended

Initial Brief raised seven issues concerning the dissolution judgment.[1]  We reversed on the following five issues regarding the dissolution judgment: (1) Equitable Distribution of the Marital Home; (2) Imputation of Income to Former Wife; (3) The Minor Child's Private School Tuition; (4) Life Insurance to Secure Alimony and Child Support; and (5) Former Wife's Attorney's Fees and Costs as of Final Hearing.  We also specifically noted in the opening paragraph of the decision that "[a]ll issues that do not follow below, we affirm without discussion."  *Id.* at 925.

In the paragraph captioned "Equitable Distribution of the Marital Home," our opinion stated: "We reverse the trial court's decisions regarding equitable distribution.  A trial court is obligated to identify, value, and distribute the marital and non-marital assets and liabilities."  *Id.*  We found there to be three errors: the failure to attach the equitable distribution schedule, indicate if there was a shift in title, and order partition:

> The temporary use of the marital home was awarded to Former Wife "until the full implementation of the equitable distribution schedule"; however, without Exhibit "A" attached to the final order, no findings awarding the equity in the home can be discerned from the record.  Moreover, even though the trial court awarded equity in the marital home to Former Wife, it failed to indicate if there was a shift in title.  Also, the Former Wife requested partition.  Where a request for partition complies with section 64.041, Florida Statutes (2010), and is not contested by the opposing party, failure to divide the property is reversible error.

*Id.* at 926.  We then concluded our discussion of the equitable distribution issue by noting that the trial court could revise the entire scheme of

---

[1] The Initial Brief argued that the trial court erred in: (1) requiring the former husband to maintain a two million dollar ($2,000,000) life insurance policy to secure the court's award of alimony and child support; (2) failing to account for the negative value of the former husband's dental practice in its equitable distribution schedule; (3) failing to equitably distribute the marital home and require the former wife to pay for the expenses associated with the marital home where she was granted exclusive use and possession; (4) not imputing income above the minimum wage to the former wife for purposes of calculating alimony and child support; (5) awarding the former wife durational alimony for a period of ten years; (6) obligating the former husband to pay one hundred percent (100%) of the minor child's private school tuition; and (7) ruling that the former husband should be obligated to pay one hundred percent (100%) of the former wife's attorney's fees, costs, and suit money.

2

equitable distribution on remand: "Because the trial court did not properly rule concerning the marital residence, the entire scheme of equitable division devised by the trial court may need revision."[2]  *Id.*

On the issue of imputed income, we reversed and found that "an imputation of income at a rate of $15,000 a year is unsupported by the evidence."  *Id.*  After noting that a trial court is required to make specific findings when imputing income at an amount other than the median income, we explained: "The trial court failed to make a finding as to whether Wife's unemployment was either voluntary or involuntary; it did not find whether she was able to obtain employment, only that she was able to seek employment."  *Id.*  We also stated: "Former Wife explained that $36,000 is the starting salary for an entry level member of her profession. Her expert explained that a starting level employee in her position could make at minimum $25,000."  *Id.*

On the issue of whether the former husband should be required to pay for the child's private school tuition, we reversed because "[t]he trial court failed to make findings regarding whether Former Husband was able to pay the additional expense."  *Id.*

We also reversed the determination that the former wife was entitled to attorney's fees, explaining: "We reverse on this issue because where equitable distribution is reversed on appeal, it may be appropriate to reexamine attorney's fees to determine if the redistribution of assets and liabilities affects the award for attorney's fees."  *Id.* at 927.

Finally, we stated that "[b]ecause we reverse the award of alimony and child support, we reverse the determination that Former Husband is in contempt."  *Id.*

The *Brennan I* opinion did not specifically discuss the former husband's arguments that: (1) the trial court erred in failing to account for the negative $240,000 value of the former husband's dental practice in its equitable distribution schedule; and (2) the trial court abused its discretion in awarding the former wife durational alimony for a period of

---

[2] Unfortunately, the reversal on this issue in *Brennan I* was based in part on the incorrect assumption that the equitable distribution schedule (Exhibit "A") was missing from the appellate record, when in fact the schedule—which indicated that the former wife was being awarded the net equity in the marital home—was included in the record as an attachment to the Amended Final Judgment entered on relinquishment of jurisdiction.  We note that the parties should have, but did not, bring this matter to our attention on rehearing in *Brennan I.*

ten years. We therefore affirmed on these issues without discussion. *Id.* at 925 ("All issues that do not follow below, we affirm without discussion.").

At the final hearing on remand, the court heard testimony from the parties and the former husband's vocational expert and appraiser. The former wife objected to re-litigating the former husband's financial circumstances and revisiting the valuations in the original equitable distribution schedule, but the court allowed evidence concerning these matters.

The appraiser testified that the home was worth $500,000. The former wife and the former husband's vocational expert both gave testimony relevant to the imputation of income issue. The former husband claimed that he was $1.1 million in debt with his dental business at the time of the dissolution petition. He also gave testimony relevant to the issue of the child's private school tuition, including testimony as to his 2013 income.

Following the hearing, the trial court entered the Second Remand Judgment, which adopted the former husband's proposed equitable distribution schedule. The trial court valued the former husband's dental business at negative $240,000.[3] The court also ordered partition and sale of the marital home, but the judgment contained inconsistent provisions regarding whether the home would be listed for private sale or sold at a public auction.

The new equitable distribution schedule changed the value of various assets (including the marital home), and also distributed assets differently.

In the Second Remand Judgment, the court also revisited the issue of imputation of income. Relying upon the testimony of the former husband's vocational expert, the court imputed $48,000 in income to the former wife. The court reduced the duration of alimony so that alimony would terminate five years from the date of the Second Remand Judgment. Based on the new imputation of income figure, the court ordered the former husband to pay $3,250 per month in durational alimony to the former wife.

On the issue of private school, the court found that the child's private school expenses were paid either through borrowing, selling assets, or receiving gifts from family members, and that these expenses were not

---

[3] However, in conflict with the court's findings in the body of the Second Remand Judgment, the attached equitable distribution schedule indicated that the husband's dental practice was worth significantly less than negative $240,000.

4

otherwise affordable by the parties during the marriage. The court declined to order either party to fund private schooling beyond the 2013-14 school year.

The court required the parties to bear their own attorney's fees and costs. Based on the actual and imputed income of the parties, the award of alimony, and the equitable distribution of assets and liabilities, the court found that both parties were placed "with a negative net worth," leaving "neither party with the ability to pay the attorney's fees and costs of the other party."

This appeal ensued.

### *The Trial Court Exceeded the Scope of Remand*

A trial court lacks discretionary power to go beyond the scope of relief granted by the appellate court, and it is not authorized to deviate from the terms of an appellate court's instructions. *Akins v. Akins*, 839 So. 2d 910, 911 (Fla. 5th DCA 2003).

"A reversal and remand with general directions for further proceedings vests the trial court with broad discretion in directing the course of the cause." *Wolfe v. Nazaire*, 758 So. 2d 730, 733 (Fla. 4th DCA 2000). For example, "when a cause is remanded for reconsideration in the light of the opinion, the case goes back to the lower court in the same condition as if the order appealed from had not been entered." *Tampa Elec. Co. v. Crosby*, 168 So. 2d 70, 73 (Fla. 1964). If a reviewing court "merely remands for further consideration, without expressly restricting the trier of the facts, then the latter may, in [its] discretion, receive additional evidence." *Id.*

"Where, however, the remand instruction is specific, it is improper to exceed the bounds of that instruction." *Wolfe*, 758 So. 2d at 733. For example, a trial court exceeds the appellate mandate by changing the values set in an original final judgment of dissolution where the original valuation of assets was not disturbed in the first appeal and where the directions on remand did not permit any revaluation. *See Rosecan v. Springer*, 985 So. 2d 607, 609 (Fla. 4th DCA 2008).

Here, we find that the trial court exceeded the scope of the appellate mandate in *Brennan I* by revaluing assets and liabilities, including revisiting the issue of the value of the former husband's dental practice. In *Brennan I*, we addressed the equitable distribution of the marital home and required the trial court to partition the home. We noted that after the court made a proper ruling concerning the home, "the entire scheme of

equitable *division* devised by the trial court may need revision."  *Brennan I,* 122 So. 3d at 926 (emphasis added).

However, our opinion did not explicitly or implicitly authorize the trial court to reconsider the valuation of any assets or liabilities in the original equitable distribution scheme.  The only challenge to any valuation issue in the former husband's initial brief in *Brennan I* was to the trial court's alleged "failure to account for the negative value of the former husband's dental practice in its equitable distribution schedule."  However, in *Brennan I,* we affirmed on that issue without discussion.  Thus, the trial court should not have revisited the valuation of assets and liabilities on remand.

We also find that the trial court exceeded the scope of the mandate by reducing the duration of the alimony.  The ten-year duration of alimony is the law of the case.  *See Fla. Dep't of Transp. v. Juliano,* 801 So. 2d 101, 105 (Fla. 2001) ("The doctrine of the law of the case requires that questions of law actually decided on appeal must govern the case in the same court and the trial court, through all subsequent stages of the proceedings.").

The court did not, however, exceed the scope of remand by considering evidence regarding the former husband's 2013 income, which was relevant to the *amount* of alimony as well as the issue of whether the former husband should be compelled to pay for the minor child's private school tuition.  Following a reversal of a dissolution judgment, a trial court may hear evidence regarding the parties' current income if issues regarding support obligations are still in play on remand.  *See Addie v. Coale,* 40 Fla. L. Weekly D2627, 2015 WL 7566689, at *3 (Fla. 4th DCA Nov. 25, 2015) (where this court reversed the complete denial of alimony to the former husband in the first appeal, and more than three years had passed since evidence regarding the parties' financial circumstances had last been presented, the trial court was not precluded from taking evidence on remand regarding need and ability to pay, as "[b]oth need and ability to pay are dynamic issues that are likely to change over time").

Because the trial court exceeded the scope of remand in *Brennan I,* we reverse and remand with directions for the trial court to split the net proceeds, if any, from the sale of the marital home, and then redistribute the remaining assets and liabilities in the original equitable distribution schedule without revaluing them.  We also reverse and remand for the trial court to reinstate the ten-year duration of alimony from the date of the original final judgment.

### *Our Prior Ruling Concerning the Marital Home*

6

The former wife next argues that this court's prior ruling as to the marital home was based on this court's incorrect belief that the original equitable distribution schedule (Exhibit "A") was missing from the record (when in fact it was not), which resulted in a manifest injustice to the former wife. The former wife also contends that the trial court was never obligated to partition the marital home, because she pled partition in the alternative and never pursued partition in the litigation.

We decline to revisit our prior ruling that the trial court erred in failing to divide the marital home. The arguments the former wife makes on this issue could have been advanced in a motion for rehearing in *Brennan I*, but the former wife did not do so. Moreover, the marital estate is still being divided equally, and we are reversing the trial court's revaluation of assets on remand from *Brennan I*. Therefore, partition of the marital home will not result in a manifest injustice to the former wife. On remand, however, the trial court should correct the inconsistency in the Second Remand Judgment with respect to whether the home is to be sold at a private sale or at a public auction.

### *Imputation of Income*

The standard of review for a trial court's findings regarding imputation of income is whether the findings are supported by substantial competent evidence. *Tarnawski v. Tarnawski*, 851 So. 2d 239, 242 (Fla. 4th DCA 2003). "A court may impute income where a party is willfully earning less and the party has the capability to earn more by the use of his best efforts." *Schram v. Schram*, 932 So. 2d 245, 249 (Fla. 4th DCA 2005). "However, it is error for the trial court to impute income to a spouse in an amount higher than the spouse has ever historically earned, absent special circumstances." *Tarnawski*, 851 So. 2d at 242.

We affirm the trial court's decision to impute $48,000 in annual income to the former wife. Competent substantial evidence supports the trial court's findings that the former wife was immediately employable in the field of speech pathology, that the former wife's gap in employment was not a bar to obtaining immediate employment, and that the former wife had not been motivated to find a job in her field of expertise. Although the former wife spent most of the marriage as a stay-at-home mother, the former wife has a master's degree and is a licensed speech pathologist. The former husband's vocational expert opined that there were numerous open positions in speech pathology for which the former wife was qualified despite her long absence from the work force. The expert also testified that the majority of the entry-level positions for which the former wife

7

would be qualified pay in the range of $47,000 to $50,000 per year. While the court imputed an amount of income that is higher than the former wife has ever historically earned, under these circumstances we decline to disturb the trial court's decision to impute an entry-level wage to the former wife in a field in which she is qualified and can obtain immediate employment.

### *Attorney's Fees*

Because we are reversing the trial court's decision to revalue assets on remand from *Brennan I,* we also reverse for reconsideration of the attorney's fees issue. *See Segall v. Segall,* 708 So. 2d 983, 989 (Fla. 4th DCA 1998) ("[W]here, as here, the results of an appeal materially change the parties' abilities to pay, the issue of attorneys' fees must be revisited upon remand to the trial court.").

### *Alimony Credit*

Paragraph 4 of the decretal portion of the Second Remand Judgment states in relevant part:

> [T]he Former Husband shall receive a credit pursuant to the findings set forth in paragraph G, which credit shall be paid by the Former Wife to the Former Husband on a monthly basis in an amount to be agreed upon. The Court specifically reserves jurisdiction to determine the monthly amount the Former Wife shall pay the Former Husband in the event the parties are unable to otherwise agree.

The Second Remand Judgment does not contain a paragraph G.[4]

On appeal, the former wife argues that the trial court's award of the alimony credit to the former husband is unsupported by any findings. She claims it is impossible to determine the amount of any such credit, how such credit was calculated, or what period of time is covered by the credit.

We agree with the former wife that the Second Remand Judgment fails to explain how the alimony credit will be calculated. However, we reject

---

[4] However, paragraph G in the First Remand Judgment stated: "The Former Husband is entitled to a credit equal to the alimony actually paid by the Former Husband to the Former Wife in excess of Three Thousand Two Hundred Fifty Dollars ($3,250) per month from October 19, 2011 to present." The original dissolution judgment was entered on October 19, 2011.

the former wife's suggestion that the award of the alimony credit should be "vacated." Rather, because the Second Remand Judgment determined entitlement but did not determine the amount of the alimony credit, the issue has not been determined with finality and is not ripe for appellate review. *Cf. Revier v. Revier*, 45 So. 3d 570, 571 (Fla. 4th DCA 2010) ("We dismiss that aspect of the final judgment as it relates to the award of attorney's fees since the trial court determined only entitlement and reserved the determination of amount for a future day.").

Before the trial court determines the amount of the alimony credit with finality, it would be premature for us to address the former husband's entitlement to the alimony credit or the proper method of calculating such a credit.[5]

On remand, any award of an alimony credit should set forth the amount of the credit and explain how the credit was calculated.

### *Private School Tuition*

A trial court's decision on whether to order a parent to pay for a child to attend private school is reviewed for an abuse of discretion. *Gelman v. Gelman*, 24 So. 3d 1281, 1282 (Fla. 4th DCA 2010). A court may order a parent to pay for private educational expenses if it finds: (1) the parent has the ability to pay for private school; (2) the expenses are in accordance with the family's customary standard of living; and (3) private school attendance is in the child's best interest. *Id.* at 1282-83.

Here, competent substantial evidence supports the trial court's finding that the former husband did not have the ability to pay for the child's private school expenses.[6] We therefore affirm on this issue.

---

[5] The calculation of an alimony credit to the former husband is complicated by the fact that, before the entry of the Second Remand Judgment, the former husband was paying $7,250 in undifferentiated support under a temporary relief order.

[6] The former wife also contends that the trial court went beyond the scope of remand by revisiting its finding in the original final judgment that the expense of private school tuition was in accordance with the family's traditional and customary standard of living. Assuming the trial court did exceed the scope of remand by changing this finding, any error is harmless where the trial court also found that the former husband did not have the ability to pay for the private school tuition.

### *Conclusion*

For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

*Affirmed in part, Reversed in part, and Remanded.*

WARNER and FORST, JJ., concur.

\*      \*      \*

***Not final until disposition of timely filed motion for rehearing.***