# Third District Court of Appeal

## State of Florida

Opinion filed January 31, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1399
Lower Tribunal No. 11-31255
_____

**Einath Bach Levy,**
Appellant,

vs.

**Samuel Salomon Levy,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Ivonne Cuesta, Judge.

Nancy A. Hass, P.A., and Nancy A. Hass (Fort Lauderdale), for appellant.

Abramowitz and Associates, and Evan L. Abramowitz, for appellee.

Before HENDON, MILLER, and LOBREE, JJ.

HENDON, J.

Einath Bach Levy ("Mother") appeals from the "Order on Father's

Motion for Reallocation of Responsibility for Guardian ad Litem Fees and for Mother to Make Contribution to Same."[1]  We reverse the order under review and remand with instructions.

The Mother and Samuel Salomon Levy ("Father") divorced in Virginia in 2011.  The parties have two minor children, a son born in 2008 and a daughter born in 2010 (collectively, "minor children").  In 2011, the trial court entered an agreed order domesticating, among other things, the parties' final judgment of dissolution of marriage and their Consent Custody and Visitation Agreement.

In March 2020, the Mother, on behalf of the parties' two minor children, filed petitions for injunction for protection against domestic violence with children ("DV Petitions"). The trial court appointed a guardian ad litem for the minor children ("Guardian") in the domestic violence cases. The trial court's order provides that the Father is required to pay 100% of the Guardian's fees, but reserved jurisdiction to reallocate the fees and costs.

---

[1] The Mother also appealed the July 18, 2022 "Order on Father's Motion for Attorney's Fees and Costs Dated October 27, 2021."  This order reflects that the Father sought attorney's fees based on the trial court's granting of the "Father's Emergency Motion to Adjudicate Mother in Contempt and to Suspend Mother Timesharing with Minor Children," in which the trial court reserved jurisdiction to determine the Father's request for attorney's fees and costs.  The Mother has not raised any issues in this appeal regarding the order entered on July 18, 2022.

Following a hearing conducted in June 2020, the trial court denied the DV Petitions. Thereafter, on July 1, 2020, the trial court entered an order in the underlying action, stating that, although the DV Petitions were denied, based on the evidence presented, further intervention was needed for the family, and appointed the Guardian to act as the guardian ad litem for the minor children in the underlying post-dissolution case. The trial court noted that the minor son was experiencing anxiety about visiting the Father, and the minor son's and Father's relationship was deteriorating, and as a result, the trial court temporarily altered the Father's timesharing with the minor son.

Following the appointment of the Guardian in the underlying case, the parties continued to engage in litigation. The Father filed several motions, which were either granted or granted in part. In the orders, the trial court significantly reduced the Mother's timesharing with the minor children, particularly with the minor son. In one of the orders, the trial court stated, among other things, that the parties "remain engaged in bitter disputes and are unable to co-parent in a manner that is in the best interest of the children."

In October 2021, the Father filed "Father's Motion for Reallocation of Responsibility for Guardian Ad Litem Fees and for Mother to Make

Contribution to Same" ("Motion for Reallocation of Fees"), which is at issue in this appeal. In the motion, the Father sought to reallocate the Guardian's fees as permitted in the order appointing the Guardian. The Father asserted that, since the trial court's appointment of the Guardian, the Mother has hired a board certified family law attorney, indicating she has means available to her to contribute to the cost of the Guardian's fees. The Father requested that the trial court reallocate the Guardian's fees, and order the Mother to contribute to the fees or, in the alternative, for the Mother to pay the cost of the Guardian moving forward.

The trial court conducted a hearing on the Father's Motion for Reallocation of Fees, during which the Father and Mother testified, and the parties' financial affidavits and the Guardian's billing records were introduced into evidence. The trial court did not rule at the conclusion of the hearing.

On July 15, 2022, the trial court entered its "Order on Father's Motion for Reallocation of Responsibility For Guardian ad Litem Fees and for Mother to Make Contribution to Same." In its order, the trial court noted that the Father testified that he has paid in excess of $96,000 in fees to the Guardian, and that "many" of the Guardian's fees were incurred as a result

4

of the Mother's actions.[2]  The trial court found that the Guardian's billing records corroborated the Father's testimony.   The trial court's order, however, does not specify which of the Mother's actions resulted in the Guardian's fees or the amount of fees incurred as a result of the Mother's actions.

The trial court's order also addressed the Father's testimony as to his finances.  The trial court noted that the Father's financial affidavit reflects that his gross monthly income is $10,690.00, and that he testified that he has taken additional funds from his corporation to pay for many of the expenses in the case.  The  trial court also noted that the Father's testimony reflects he pays other expenses related to the minor children in addition to child support.[3]

The trial court also addressed the Mother's testimony and financial affidavit.  The trial court noted that the Mother's testimony reflects she is a self-employed designer, earning $1,000 per month, and she has "made no real effort to find true gainful employment as she is being regularly supported by her boyfriend and family member."  The trial court, however, did not state that it was imputing income to the Mother for her lack of effort

---

[2] The trial court's order also provides that the trial court agrees with the Father's "testimony that an overwhelming amount of work done by the Guardian in this matter has been a result of the actions of the Mother."

[3] The Father pays $1,250 per month in child support for the minor children.

5

in finding other employment.

As to the trial court's statement that the Mother is "being regularly supported by her boyfriend and family member," the trial court addressed (1) the Mother living in her brother's condominium; (2) the Mother's brother and boyfriend providing funds to her former and current attorneys in the lower tribunal; (3) the Mother having access to one of her boyfriend's vehicles, and (4) her boyfriend taking the Mother out to dinner and on vacations. The trial court stated that the "relevant inquiry" when determining whether to include as income any financial benefits received from others is whether the benefit is regular and expected and whether the benefit reduces living expenses.

First, as to the Mother's housing, the trial court stated that the Mother's testimony shows that she has lived in her brother's condominium for approximately ten years, she pays only the monthly maintenance fees, and the condominium could be rented for approximately $2,500 to $3,000 per month. Despite paying the monthly maintenance fee and maintaining the condominium, the trial court found that the Mother is living in the property "rent free." The trial court's order provides that in court opinions the value of "free housing has been imputed, where the benefit is expected," but the trial court did not specifically state in its order that it was

6

imputing any income to the Mother based on her living in her brother's condominium, and if so, in what amount.

Second, the trial court addressed the funds the Mother's brother and boyfriend provided to pay for the Mother's attorneys' fees. The trial court stated that the Mother's testimony reflects her boyfriend paid "tens of thousands of dollars to her current attorney, Mr. Fox," and her brother paid "hundreds of thousands of dollars in attorney's fees for the attorneys the Mother had prior to Mr. Fox." Further, as stated in the order, the Mother testified that although there are no loan documents, she believes she owes her brother and boyfriend the monies she received from them to pay her attorneys. The trial court's order does not specifically make any findings as to whether these payments to her attorneys were gifts, rather than loans, and if "gifts," whether these types of substantial "gifts" will continue in the future.

Third, the trial court also noted that the Mother's testimony reflects that her boyfriend allows her to use his vehicle whenever she needs it. The trial court's order states no further facts as to the use of vehicle. Further, the order does not specifically state that the trial court is imputing income to the Mother based on her access to her boyfriend's vehicle and, if imputing income, the amount of income it is imputing.

7

Finally, the trial court also noted that the Mother's testimony indicates that her boyfriend invites her out to dinner and pays for vacations. Once again, the trial court's order does not make any further findings such as whether the trial court is actually imputing income to the Mother based on these dinner invitations and vacations.

The trial court granted the Father's Motion for Reallocation of Fees. The trial court found that, under the circumstances, it is equitable for the Mother to be responsible for 50% of the Guardian's fees, representing $48,000 through June 1, 2022, and any fees incurred after that date. The Mother's appeal followed.

The Mother contends the trial court abused its discretion and erred by imputing income to the Mother, and by ordering her to pay 50% of the Guardian's fees, including 50% of past fees paid by the Father through June 1, 2022 ($48,000), without making necessary findings as to the Mother's ability to pay. See Brennan v. Brennan, 184 So. 3d 583, 590 (Fla. 4th DCA 2016) ("The standard of review for a trial court's findings regarding imputation of income is whether the findings are supported by substantial competent evidence."); see also Iannuzzelli v. Lovett, 981 So. 2d 557, 559-60 (Fla. 3d DCA 2008) (stating that a trial court has discretion in determining whether to award attorney's fees and costs under section

8

61.16).  The trial court's order directing the Mother to pay both the past and future fees assessed by the Guardian was also based on the Mother's actions necessitating a portion of the Guardian's fees.  The assessments of fees based on the Mother's actions is reviewed for abuse of discretion.  See Rosaler v. Rosaler, 226 So. 3d 911, 912 (Fla. 4th DCA 2017) (stating that trial court's consideration of the parties' litigation conduct to limit attorney's fees and to order the payment of costs under section 61.16, Florida Statutes, is reviewed for abuse of discretion, "even where the party that benefits from the ruling occupies the superior financial position").

"[S]ection 61.16(1) of the Florida Statutes requires that the trial court take into consideration the parties' financial ability to pay when imposing attorney's fees and costs."  Troike v. Troike, 271 So. 3d 1069, 1073 (Fla. 3d DCA 2019); see also § 61.16(1), Fla. Stat. (2022) ("The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for . . . the cost to the other party of maintaining or defending any proceeding under this chapter . . . ."  The appointment of the Guardian in the instant case is considered a "cost" of the litigation.  See Franklin & Criscuolo/Lienor v. Etter, 924 So. 2d 947, 950 (Fla. 3d DCA 2006) (noting that where a guardian ad litem is properly appointed, the guardian ad litem's fees are a cost of litigation).

The trial court's order granting the Father's Motion for Reallocation of Fees and ordering the Mother to pay 50% of the Guardian's past and future fees was based on the Mother' failure to seek out "true gainful employment"; her receipt of financial benefits from her brother and boyfriend; and/or the Mother's actions necessitating the services of the Guardian. The trial court did not specifically state it was imputing income to the Mother based on her failure to seek out "true gainful employment."[4] However, assuming the trial court's statements in its order can be taken as an imputing income to the Mother, the trial court failed to state how much income it was imputing to the Mother.

Next, in addressing the funds the Mother's brother and boyfriend provided to pay for her past and current lower tribunal counsels and other financial benefits, the trial court's order fails to contain sufficient findings. This Court's decision in <u>Rogers v. Rogers</u>, 824 So. 2d 902 (Fla. 3d DCA 2002), is instructive. In the dissolution of marriage action, the trial court granted the wife's motion for temporary attorney's fees and costs based on her need and the husband's ability to pay. The trial court relied, in part, on loans that the husband's parents made to the husband prior to the marriage ($24,500), during the marriage ($12,000 in October 2000, and $22,000 in

---

[4] At the hearing, the trial court stated that the Mother is earning less than minimum wage.

10

March 2001), and after the parties separated (a total of $72,000 within a five month period). The loans were secured by promissory notes. <u>Rogers</u>, 824 So. 2d at 903. The husband appealed.

On appeal from the order granting the wife temporary attorney's fees, this Court explained as follows:

> When determining a party's ability to pay and a party's need for attorney's fees and costs, the general rule is that the trial court may only consider the financial resources of the parties and not the financial assistance of family or friends. An exception to this general rule is that income can be imputed based on gifts if the gifts are continuing and ongoing, not sporadic, and where the evidence shows that the gifts will continue in the future.

<u>Id.</u> at 903 (internal quotation marks and citations omitted). This Court found that the exception to the general rule was not applicable, stating as follows:

> Contrary to the wife's argument, the exception is not applicable in the instant case. The evidence showed that the husband's parents made large, sporadic loans to the husband, which varied in amount and frequency. Further, there was no evidence that the husband's parents would continue to loan the husband money in the future. Moreover, unlike gifts, the husband continues to be legally indebted to his parents.
>
> Although the lower court also relied on the husband's assets in awarding fees and costs to the wife, we must nonetheless reverse and remand for reconsideration where the loans were a primary factor in the lower court's finding that the husband had the ability to pay. On remand, the lower court is directed to reconsider the wife's motion for attorney's fees and costs based upon the parties' financial resources, not the financial resources of family or friends.

11

Id.; see also Troike, 271 So. 3d at 1072-73, 1073 n.4 (noting that the husband paid the wife's prior fees and costs (including guardian ad litem fees) with funds he received from his parents, which funds were not secured by a promissory note; reversing the order requiring the husband to pay the wife's temporary alimony, attorney's fees, and costs, and remanding for the trial court to consider the husband's financial ability to pay with instructions that the "loans should not be considered in determining [the husband's] financial ability").

The trial court's order fails to make any findings as to whether the exception to the general rule is applicable in the instant case, or findings as to the parties' financial ability to pay the Guardian's fees. Without these findings, we cannot determine whether the trial court abused its discretion. Therefore, we reverse the order under review and remand with instructions for the trial court to make the necessary factual findings and conclusions based on those findings, and if the trial court deems necessary, to conduct a further hearing.[5]

Finally, the trial court's order requiring the Mother to pay 50% of the Guardian's past and ongoing fees was also based on the Mother's actions,

---

[5] We take no position as to any factual findings, conclusions, or whether a subsequent hearing is necessary.

12

which resulted in necessitating the Guardian's services. The trial court did not specifically set forth what part of the Guardian's work was as a result of the Mother's actions. The record demonstrates that both the Mother's and the Father's actions resulted in the Guardian's services. See Meloan v. Coverdale, 525 So. 2d 935, 937 (Fla. 3d DCA 1988) (reversing assessment of guardian ad litem fees and attorney's fees against former husband, despite his superior financial position, where the former husband was required to "resort to enforcement action in court" because the former wife resisted former husband's visitation rights; holding that remand was required so that trial court could take into account not only the financial positions of the parties but other equitable factors); Hahamovitch v. Hahamovitch, 133 So. 3d 1020, 1025 (Fla. 4th DCA 2014) (holding that the trial court did not abuse its discretion by awarding attorney's fees to the husband, even though he has a greater financial ability to pay, where "the trial court's award of attorney's fees was based upon an express finding of bad faith conduct and was supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorney's fees," and where the "court's findings were supported by the record, and the fee award was limited to fees that were unnecessarily incurred due to the wife's untrue allegations"). Thus, on

13

remand, the trial court is also instructed to make detailed findings as to the Mother's action necessitating the Guardian's services, and to make conclusions based on those findings.[6]

Reversed and remanded with instructions.

---

[6] We also take no position as to any factual findings relating to the Mother's actions necessitating the Guardian's services or conclusions based on those facts. We also take no position as to ordering the Mother to pay 50% of the Guardian's fees.