DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**ANNA LOUISE KRIFT,**
Appellant,

v.

**DARYL DEAN OBENOUR,**
Appellee.

No. 4D13-1151

[ November 5, 2014 ]

Appeal and cross-appeal from the Fifteenth Judicial Circuit, Palm Beach County; Jack S. Cox, Judge; L.T. Case No. 502010DR013723XXXXMB.

Bennett S. Cohn, West Palm Beach, for appellant.

Robin Bresky and Jonathan Mann of the Law Offices of Robin Bresky, Boca Raton, for appellee.

TAYLOR, J.

The former wife appeals an amended final judgment of dissolution that ordered a rotating timesharing schedule which required the minor child to move every two months between the mother's and father's homes. She argues that the trial court violated her due process rights by ordering the rotating schedule, because neither party pled for or requested it and she had no opportunity to present evidence concerning the timesharing plan. Because the rotating timesharing plan ordered by the trial court was such a material departure from the plan the parties requested, we reverse and remand for further proceedings on this issue. The former husband cross-appeals, arguing that the trial court erred by classifying the credit card debt that he incurred during his marriage as non-marital debt. For reasons stated below, we affirm the cross-appeal.

The parties were married in November 2009. They had one child during the marriage, born in February 2010. During the marriage, the former husband commuted between the home they shared in Lake Worth and his job in Bahia Honda in the Florida Keys. When they separated in 2010, the

former husband moved to Bahia Honda. The parties agreed on a timesharing plan wherein the former husband had the child for three overnights at his home in Bahia Honda and the former wife had the child for four overnights in Lake Worth. During this exchange, the child traveled an average of 400 miles a week roundtrip from Lake Worth to Bahia Honda.

At trial, the former wife requested that the trial court order the Model Parental Timesharing Schedule (Instate Where Parents Reside More than 45 miles Apart). Under the terms of that plan, the child would live with a primary residential parent during the week and spend every other weekend with the secondary residential parent. The former husband requested that their timesharing plan remain the same, with the child traveling between Lake Worth and Bahia Honda each week. He suggested that when the child enrolled in kindergarten, in either Bahia Honda or Lake Worth, the secondary residential parent move within fifty miles so that they could continue equal timesharing.

The trial court entered a Final Judgment of Dissolution of Marriage with a rotating timesharing plan requiring the child to spend two months with each parent. During those two months, the non-custodial parent would be allowed weekly daytime visitation with the child. Both parties filed motions for rehearing for a determination as to who would be the primary residential parent once the child reached kindergarten age. In her Motion for Rehearing and/or Clarification, the former wife also questioned why the trial court implemented a two-month rotating schedule instead of the Model Parental Timesharing Schedule (Instate Where Parents Reside More than 45 miles Apart).

The trial court denied the former wife's Motion for Rehearing and/or Clarification but granted the former husband's motion. The court issued an Amended Final Judgment designating the former husband as the primary residential parent once the child reaches kindergarten age. The court also ordered implementation of the Model Parental Timesharing Plan at that time.

On appeal, the former wife argues that the trial court erred by ordering a rotating timesharing plan that neither party requested in their pleadings or at any time during trial. She also argues that the trial court's decision regarding the child's residence upon reaching kindergarten age was an impermissible prospective relocation of the child.
.
A trial court's timesharing and parenting plan determination is reviewed for an abuse of discretion. *Winters v. Brown,* 51 So. 3d 656, 658

(Fla. 4th DCA 2011).

"[U]nder Florida Law a trial court may not order an annual, rotating time-sharing where neither parent requested such a plan in the pleadings, nor argued for the plan at the final hearing." *Bainbridge v. Pratt*, 68 So. 3d 310, 314 (Fla. 1st DCA 2011); *see also Flemming v. Flemming*, 742 So. 2d 843, 844 (Fla. 1st DCA 1999) ("The trial court did not have authority to rule on matters that were 'not the subject of appropriate pleadings and notice.'").

In *Bainbridge*, the appellate court reversed an annual rotating timesharing plan ordered by the trial court because it had not been requested by either parent in the pleadings or at the final hearing. 68 So. 3d at 314. The first time a rotating schedule was mentioned was when the trial judge stated, "I think I am going to do something which I think is in [the minor child's] best interests. You both may not be happy with my decision." *Id.* at 315. The court held that due process concerns required a reversal of the trial court's decision. *Id.*

In *Flemming*, the court reversed an order with a weekly rotating timesharing plan because the plan was not raised by pleadings or agreed upon by the parties. 742 So. 2d at 844. Before trial, the parties stipulated that the mother would be the primary residential parent and the father would be the secondary residential parent. *Id.* However, at trial, the father requested that the children live an equal amount of time with each parent on alternating weeks. *Id.* The mother objected to the arrangement because it was not raised in the pleadings. *Id.* Nevertheless, the trial court ordered the rotating schedule. *Id.*

In this case, both parties agree that neither one of them requested the two-month rotating schedule in their pleadings or at any time during the trial. They both lacked notice that the trial court would consider such an arrangement. At the time of trial, the parties were engaged in a timesharing schedule whereby they split the week. The former wife had the child for four overnights and the former husband had the child for three overnights. The former husband requested that the timesharing schedule remain the same until the child reached kindergarten age. The former wife requested that the court order the Model Parental Timesharing Schedule (Instate Where Parents Reside More than 45 miles Apart). This plan is designed around a primary residential parent and a secondary residential parent, with the child spending weekends with the secondary residential parent twice a month.

Similar to *Bainbridge*, the first time that a two-month rotating schedule

3

was mentioned was at the end of the trial, when the court expressed concerns about the child traveling back and forth over 400 miles several times a month. To address those concerns, the court stated that it would be considering longer periods of time with each parent—such as blocks of months. Neither party had the opportunity to present evidence or arguments as to whether this arrangement was in the best interest of the child. Because the two-month rotating timesharing plan established by the trial court was such a significant departure from the timesharing schedule requested by the parties in their pleadings and at trial, we agree that the trial court erred in ordering it. The wife's due process rights were violated because she was not given notice that the trial court would consider the two-month rotating schedule and was not given the opportunity to present evidence on the issue. *See Moore v. Wilson,* 16 So. 3d 222, 224 (Fla. 5th DCA 2009) (holding that the trial court's order for rotating custody violated the parties' due process rights where neither party pled for or requested rotating custody).

Accordingly, we reverse and remand for further proceedings on the timesharing schedule. Both parties contest the mileage reimbursement awarded the former wife for timesharing travel. On remand, we urge the court to reconsider the low transportation costs awarded to the wife, taking into account the parties' relative financial situations and the actual travel costs of implementing a timesharing plan.

The former wife also argues that the amended final judgment providing that the child will reside with the father once she reaches kindergarten age is an improper prospective relocation of the child. The Florida Supreme Court has held that a trial court must not make a best interest determination in petitions for relocation based on a "prospective-based" analysis. *Arthur v. Arthur,* 54 So. 3d 454, 459 (Fla. 2010). In *Arthur,* the trial court authorized the mother's relocation twenty months from the date of the hearing. *Id.* Specifically, the trial court found that it was in the best interest of the child that the mother relocate to Michigan when the child turned three years old, which would occur twenty months from the date of the judgment. *Id.* at 455. The supreme court concluded that the best interest determination must be made at the time of the final hearing, i.e. "present-based" analysis. 54 So. 3d at 459.

Section 61.13001(e), Florida Statutes (2012) defines "Relocation" as "a *change in the location of the principal residence of a parent* or other person from his or her principal place of residence at the time of the last order establishing or modifying time-sharing . . . . The change of location must be at least 50 miles from that residence." (emphasis added).

In this case, the trial court's decision regarding the child's residence upon reaching kindergarten age is not a ruling on a relocation request. Neither parent sought to move from his or her principal place of residence, and, under the ordered parenting plan, neither parent would be changing his or her residence. The parenting plan in the amended final judgment does not involve "relocation," as defined in section 61.13001(e), but rather orders that the father become the primary residential parent once the child begins kindergarten. We affirm this portion of the amended final judgment establishing the primary residential parent and timesharing parenting plan.

On cross-appeal, the former husband's contends that the trial court erred in determining that his credit card debt was nonmarital and that this error led to an inequitable distribution unsupported by findings.

Section 61.075(3), Florida Statutes (2012), requires the trial court to identify and value all marital assets and liabilities. Distribution of the marital assets and liabilities must be supported by factual findings in the judgment or order based on competent, substantial evidence. *Kovalchick v. Kovalchick*, 841 So. 2d 669, 679 (Fla. 4th DCA 2003). We review such findings for an abuse of discretion. *See Steele v. Steele,* 945 So. 2d 601, 602 (Fla. 4th DCA 2006). However, we review *de novo* the trial court's legal conclusion that an asset or liability is "marital" or "nonmarital," as defined in the statute. *Mondello v. Torres*, 47 So. 3d 389, 392 (Fla. 4th DCA 2010) ("A trial court's legal conclusion that an asset is marital or nonmarital is subject to de novo review."); *Smith v. Smith*, 971 So. 2d 191, 194 (Fla. 1st DCA 2007) ("The ultimate conclusion as to whether a debt is marital or nonmarital is an issue of law subject to de novo review.").

"All assets acquired and liabilities incurred by either spouse subsequent to the date of the marriage and not specifically established as nonmarital assets or liabilities are presumed to be marital assets and liabilities." § 61.075(8), Fla. Stat. (2012). However, to the extent that a party incurred debts to cover nonmarital expenses, the debt should not be classified as marital debt for the purpose of equitable distribution. *Fortune v. Fortune*, 61 So. 3d 441, 445 (Fla. 2d DCA 2011) (reversing because the trial court classified the entire amount of a loan as a martial debt without making a finding as to when the debt was incurred or what the debt was used to pay); *Walker v. Walker*, 827 So. 2d 363, 364-65 (Fla. 2d DCA 2002) (reversing because the trial court classified the entire amount of a debt as a marital debt without determining which portion of the debt was used to pay the husband's litigation and living expenses versus paying his personal income tax and property taxes).

5

Here, based on the former husband's own testimony, the trial court determined that the credit card debt in the former husband's name was nonmarital. His testimony concerning the nature and purpose of his credit card expenses sufficiently overcame the presumption that the liability was marital. Because we find no error in the trial court's classification of the former husband's credit card debt as nonmarital, we affirm.

*Affirmed in part, Reversed in part, and Remanded on direct appeal, and Affirmed on cross appeal.*

GROSS and GERBER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***