DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KATIA ALVARES-WATTERS,**
Appellant,

v.

**JOSEPH WATTERS,**
Appellee.

Nos. 4D2023-1448 and 4D2023-1561

[June 5, 2024]

Consolidated appeals from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Laura Johnson, Judge; L.T. Case No. 502020DR005277XXXXMB.

Eddie Stephens and Caryn A. Stevens of Stephens & Stevens, PLLC, West Palm Beach, for appellant.

Matthew S. Nugent and Adam M. Zborowski of Nugent Zborowski, North Palm Beach, for appellee.

WARNER, J.

This is an appeal of a final judgment of dissolution of marriage involving children and equitable distribution of property. *Over a year after the trial*, the court entered the judgment which changed the parenting plan and required the children to attend different schools, failed to completely resolve the equitable distribution of property, and failed to address the issue of retroactive alimony, the last two issues conceded by the appellee. We reverse, not only on the conceded errors but also on the parenting plan, as it was entered without the necessary evidence to support whether it was in the best interests of the children.

## Background

The parties were married in 2013 and had two children, one born in 2014 and the other in 2019. They moved to Palm Beach County where they lived in Royal Palm Beach. The former husband worked as an executive chef in Jupiter, and the former wife worked as a veterinarian,

also in Jupiter.  The oldest daughter attended kindergarten at a Catholic school in Jupiter.

When COVID arose in 2020, the former wife quit working and stayed home with the children.  The former husband continued to work, which caused friction because the former wife was concerned about his exposure to the disease.  Tensions rose, the parties separated, and the former husband moved out of the marital residence.  He filed for divorce in July 2020.

Since their separation, the former husband agreed that he has lived in three separate homes, four different times.  At the time of trial, he lived in Palm Beach Gardens.  During the divorce, the former wife moved to Parkland in Broward County and became employed with a veterinary clinic there.

Because the parties could not agree on where to send the children to school, the former wife moved for the court to designate her residence for school zone purposes and to approve the former wife's proposed plan for the 2021-2022 school year.  In the motion, she alleged her new residence was twenty-five miles from the marital home.  Following an evidentiary hearing, the trial court granted the former wife's motion allowing her residence to be used for school designation for the 2021-2022 school year.  The court also approved the former wife's proposed plan for the children for the 2021-2022 school year.  The former wife then enrolled the oldest child in a Parkland public school and the younger child in an early learning center.

The case went to trial in March 2022 and was heard over the course of three days, concluding in May.  At trial, the parties did not agree on time-sharing or school designation for their minor children.  Former husband requested 50/50 equal timesharing with the minor children, and former wife alternatively suggested that former husband have time-sharing every other weekend with one overnight during the off week.

Former wife offered the deposition of the older child's teacher in evidence.  The teacher testified how well the older child was doing in school.  The court also admitted deposition testimony from the manager of the younger child's early learning center, where the older child also attended aftercare, who testified that the younger child was doing well at the center.  Each of the parents took turns dropping her off or picking her up, and the maternal grandmother was back-up.

The former husband testified that he wanted his children to attend the Catholic school in Jupiter, which he testified had been a thirty-five minute drive from the marital home and also from where he was currently living in Palm Beach Gardens. He testified that the current schedule, when he has the children overnight during the week, requires his day starting at 5:30 a.m. to get the children ready for school, driving to Broward County to drop them off, then driving back to his place of employment in Jupiter, and then returning to Broward to pick them up and driving with them back to Palm Beach County. He testified that he spent five hours to five-and-a-half hours daily in the car.

Former wife testified that she was the historic caregiver of the minor children since their respective births, taking them to doctor's visits, extracurricular activities, and doing most of the pick-up and drop-off at school. Former wife testified that the Catholic school in Jupiter was unaffordable. In addition, the school was further north and would require much more driving from her present home and work in Fort Lauderdale. Furthermore, the older daughter was doing well and stabilized in her Parkland school. If her parenting plan were adopted, the former wife offered that she could take the children to the former husband at the beginning of his time-sharing.

The court took the case under advisement. By September, when no final judgment had been obtained, former wife moved for a status conference. The record does not reflect if the conference was held, only that the former wife had noticed the motion for hearing.

At the end of March 2023, former wife filed a motion to reopen the case to receive additional evidence regarding the children's progress in their schools and their stability in their current environment. The court summarily denied the motion. The former wife also noticed a hearing on the status of the final judgment for the beginning of May but then cancelled the hearing. The trial court finally produced a final judgment on May 15, 2023, more than a year after the beginning of the trial. The court also entered another final judgment regarding the equitable distribution of the property on June 1, 2023.

In the final judgment, the trial court found that the then-existing parenting plan was not viable, as former husband was in the car for five-and-a-half hours per day to exercise his three days with overnight visitation under that plan. The children were in the car for some of that time. The court determined, despite the parties' attacks on each other's character, that both parties were loving parents and morally fit.

The trial court stated it evaluated all the factors under section 61.13(3), Florida Statutes (2022), but noted that it did not need to address all of the factors. The trial court then adopted former husband's parenting plan which provided a 50/50 split of time-sharing between the parents. The court also decided that former husband's address should be used for school boundaries and registration for other activities.

Former wife moved for rehearing on various issues, including the location of the school boundary at former husband's residence and the court's refusal to hear additional evidence regarding the children's current situation, but the trial court denied the motion without a hearing. Former wife filed appeals of both final judgments.

## Analysis

Former wife challenges the trial court's parenting plan with the designation of former husband's address in Palm Beach Gardens as the children's school boundary as lacking any substantial competent evidence to support that it was in the best interests of the children. A trial court's parenting and timesharing plan is reviewed for an abuse of discretion. *Krift v. Obenour*, 152 So. 3d 645, 647 (Fla. 4th DCA 2014). "A trial court's decision regarding school designation is reviewed for abuse of discretion." *Johnson v. Johnson*, 313 So. 3d 651, 655 (Fla. 4th DCA 2021) (citing *Bruce v. Bruce*, 243 So. 3d 461, 464 (Fla. 5th DCA 2018)). But, as with any trial court decision, it must be supported by competent, substantial evidence.

### Best Interest of the Child in School Attendance Determination

Section 61.13(2)(b)3.b., Florida Statutes (2022), requires the parenting plan to contain a designation of the residence for school attendance. *See also Johnson*, 313 So. 3d at 655. Section 61.13(2)(b) provides:

> (b) A parenting plan approved by the court must, at a minimum:
>
> 1. Describe in adequate detail how the parents will share and be responsible for the daily tasks associated with the upbringing of the child;
>
> . . . .
>
> 3. Designate who will be responsible for:
>
> . . . .

4

b. School-related matters, including the address to be used for school-boundary determination and registration.

§ 61.13(2)(b), Fla. Stat. (2022).

The trial court's decision as to the school designation should be guided by what is in the child's best interest. *Johnson*, 313 So. 3d at 655; *Hassenplug v. Hassenplug*, 346 So. 3d 149, 152 (Fla. 2d DCA 2022). Section 61.13(3), Florida Statutes (2022), sets forth twenty factors that the trial court should consider when determining the welfare and best interests of the child. *Id.* "Although the trial court need not address each factor independently, at a minimum, it must find that its school designation is in the best interests of the child." *Hassenplug*, 346 So. 3d at 153.

In *Hassenplug*, the trial court ordered the former husband's address to be used for school-related matters. The child, who had autism, had been home-schooled by the former wife and was flourishing in this setting. *Id.* at 151, 153. However, to "level the playing field," and allow the former husband to have a greater role in the child's schooling, and because of the friction between the parties, the trial court ordered the former husband's address be designated for the child to attend a public school which had programs suitable for the child. *Id.* at 152.

The Second District reversed, noting the trial court had not considered the child's best interests in making the determination.

> [T]he trial court's school designation seems premised on diminishing the parties' discord which, the trial court reasoned, would allow Former Husband to participate more fully in the child's education. We are certain that the trial court sought to tamp down the parties' apparent power struggle. This is a praiseworthy goal. Yet, we search, without success, for how this goal advances this young child's best interests.
>
> . . . .
>
> Unfortunately, conflict between the parties is all too customary in dissolution cases. The trial court, a stranger to the family, is placed in the unenviable position of making potentially life-changing decisions affecting the child. In the discharge of our duty, however, we must ensure that the

record reflects the trial court's paramount decisional consideration, the child's best interests.

. . . .

The trial court's ruling lacks the necessary evidentiary support sufficient to satisfy our concerns that such a change is in the child's best interests.

*Id.* at 153.

Similarly, in this case, the trial court's ruling appears to have been made to reduce the time which the former husband spends traveling, and thus seems to be in his best interest rather than the children's. No discussion occurred either at the trial or in the final judgment about the children's best interests other than travel time. At trial, no evidence was presented as to what schools were available around the father's home. Evidence was presented that the older child had attended kindergarten at a Catholic school in Jupiter, but no evidence was presented that school was within the school boundary ordered by the trial court. On the other side of the issue, testimony was presented that the children were doing exceptionally well at both Parkland schools. Also, as we review the 50/50 split, it appears that, while the father may spend less time in the car, the children are likely to spend more time in the car attending schools based on the father's residence, which would ultimately interfere with school-related activities.

Former husband focuses on the fact that former wife denied him overnight visitation with the children for two years, and contends the trial court was taking that "vindictive" conduct into consideration in the parenting plan and school boundary designation. But the trial court found that both parents' claims against the other were exaggerated, and the court made no findings of vindictive conduct. Moreover, the court found that both parents loved their children and were fit parents.

In sum, no competent substantial evidence supports the designation of the father's address for the school boundary. The trial court focused on the best interest of the father, not the children. This was an abuse of discretion, requiring the court's final judgment to be reversed.

## Concession of Error on Other Issues

With respect to the equitable distribution of property, the trial court failed to attach an exhibit which designated the distribution. Without

such an exhibit, we cannot determine how the property was distributed and whether it was equitable. Former husband concedes that this failure requires a reversal.

Former wife had requested retroactive child support which the trial court failed to address in either judgment. Former husband concedes that the trial court erred as well in this regard.

## Delay in Issuing Final Judgment

Finally, the foregoing errors, including the failure to address issues and the lack of evidence to support rulings, show why we must also reverse for the extreme delay in issuing the final judgment, as excessive delay can be a ground for reversal. *See e.g. Caswell v. Caswell*, 674 So. 2d 861 (Fla. 2d DCA 1996). This is particularly true in cases involving children. *See Falabella v. Wilkins*, 656 So. 2d 256, 257 (Fla. 5th DCA 1995) (finding delay of fourteen months between hearing and oral pronouncement and another two months before the written judgment in a child custody case "indefensible and intolerable" and requiring a new trial because "trial courts have a responsibility to render their decisions under circumstances which give no doubt but that the matter was seriously and promptly considered."); *Tunnage v. Bostic*, 641 So. 2d 499, 500–01 (Fla. 4th DCA 1994) (finding seven-month delay between the trial and the entry of the final judgment required new trial where the final judgment was confusing and contradictory in its provisions and in some respects not supported by the evidence).

Cases such as this show the importance of a robust system of accountability. To that end, the supreme court recently amended Florida Rule of General Practice and Judicial Administration 2.215(g), which should promote promptness in issuing orders and judgments, as well as support the administrative responsibilities of the chief judge.[1] *See* Fla. R. Gen. Prac. & Jud. Admin. 2.215(b)(2) and (b)(3).

---

[1] Significantly, the amendment now requires the trial judge to enter an *order* on every *matter*, not every case, within a reasonable time and to advise the chief judge of *matters* under advisement pending without judicial action for more than sixty days. *See In re Amends. to Fla. Rules of Gen. Prac. and Jud. Admin.*, --- So. 3d ---, 2024 WL 1202717, at *7 (Fla. March 21, 2024).

## Conclusion

The trial court failed to consider the best interests of the children in the parenting plan, failed to fully address the equitable distribution of property, and failed to consider the former wife's entitlement to retroactive child support. In light of the foregoing, the trial judge's extreme delay in this case was also reversible error. We therefore reverse for a new trial on all issues, except the dissolution of the marriage of the parties. This will include a complete retrial of all issues relating to the children. As the trial judge retired shortly after entering the final judgment, this case must be tried before a new judge. *See Austin v. Austin*, 12 So. 3d 314 (Fla. 2d DCA 2009); *Polizzi v. Polizzi*, 600 So. 2d 490 (Fla. 5th DCA 1992).

*Reversed and remanded for further proceedings.*

KLINGENSMITH, C.J., and KUNTZ, J., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***