DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LINDSAY WALLACE,**
Appellant,

v.

**ANDREW WALLACE,**
Appellee.

No. 4D2024-0441

[July 23, 2025]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Karen M. Miller, Judge; L.T. Case No. 50-2021-DR-000993-XXXX-NB.

Amy L. Cosentino of the Law Office of Amy L. Cosentino, P.A., West Palm Beach, for appellant.

Andrew Strecker of Strecker Legal, West Palm Beach, for appellee.

DAMOORGIAN, J.

Lindsay Wallace ("Former Wife") appeals the trial court's Third Amended Final Judgment of Dissolution of Marriage entered in February 2024, dissolving her marriage to Andrew Wallace ("Former Husband"). On appeal, Former Wife argues the trial court erred in: (1) verbatim adopting Former Husband's proposed parenting plan which provided for equal timesharing and shared parental responsibility; (2) failing to address certain marital assets and liabilities, including those to which the parties had stipulated on the record and in previous court orders; (3) valuing and distributing certain marital assets and liabilities; (4) awarding Former Husband durational alimony; and (5) failing to reserve jurisdiction in the final judgment to consider Former Wife's entitlement to attorney's fees and costs. For the reasons discussed below, we affirm in part, reverse in part, and remand.

**Background**

Former Wife and Former Husband were married in 2012 and have two minor children together. The parties ultimately separated in January

2021, due to a domestic battery incident by Former Husband on Former Wife. Former Husband filed his petition for dissolution of marriage in February 2021. At the time of filing, Former Husband was facing criminal charges arising from the domestic violence incident and had a criminal domestic violence no-contact order and a civil domestic violence injunction entered against him.

During the pendency of the dissolution action, Former Husband was found guilty of one count of domestic battery against Former Wife and sentenced to seven months in jail. In December 2021, following his release from jail, Former Husband was arrested for violating the domestic violence injunction. Former Husband later pled guilty to two counts of violating the injunction.

The dissolution case ultimately proceeded to trial. The trial was spread out over five days between March and November 2023. At trial, the court heard testimony regarding Former Husband's domestic battery and injunction violation convictions. The parties also stipulated Former Husband was convicted of domestic battery against Former Wife.

At the trial's end, the trial court made no findings or rulings on the record. Approximately two months later, the trial court entered several final judgments, with the third amended final judgment being the operative final judgment in this case. The final judgment adopted verbatim Former Husband's proposed parenting plan which provided for shared parental responsibility and equal timesharing. Notably, the final judgment made no mention of Former Husband's domestic battery conviction, and nothing in the final judgment suggests the trial court had considered the domestic battery conviction in awarding shared parental responsibility and equal timesharing. This appeal follows.

**Analysis**

We generally review a trial court's timesharing and parental responsibility, equitable distribution, valuation of marital assets and liabilities, and alimony determinations for abuse of discretion. *See Krift v. Obenour*, 152 So. 3d 645, 647 (Fla. 4th DCA 2014) ("A trial court's timesharing and parenting plan determination is reviewed for an abuse of discretion."); *Bardowell v. Bardowell*, 975 So. 2d 628, 629 (Fla. 4th DCA 2008) ("The standard of review of a trial court's determination of equitable distribution is abuse of discretion."); *Inman v. Inman*, 345 So. 3d 320, 323 (Fla. 4th DCA 2022) ("The standard of review for a trial court's determination of alimony is abuse of discretion."); *Dorworth v. Dorworth*, 176 So. 3d 336, 338 (Fla. 5th DCA 2015) ("The valuation of an asset or

2

debt in connection with equitable distribution is generally reviewed for an abuse of discretion."). A trial court's legal conclusion as to whether an asset or liability is marital or nonmarital is reviewed de novo. *Krift*, 152 So. 3d at 649. With these standards of review in mind, we proceed to consider Former Wife's arguments.

### 1. Timesharing and Parenting Plan

Former Wife first argues the trial court erred in adopting verbatim Former Husband's proposed parenting plan, as it included issues not supported by the evidence and is contrary to Florida law. Finding merit in Former Wife's argument that the trial court failed to address and consider Former Husband's domestic battery conviction in awarding equal timesharing and shared parental responsibility, we reverse the parenting plan in its entirety. Our holding moots Former Wife's other arguments, including that the parenting plan is replete with inconsistencies and errors.

Section 61.13(2)(c)2., Florida Statutes (2024), requires a court to award shared parental responsibility "unless the court finds that shared parental responsibility would be detrimental to the child." In determining detriment to the child, the statute requires the court to consider, among other things, "[e]vidence of domestic violence, as defined in s. 741.28." § 61.13(2)(c)2.a., Fla. Stat. (2024). A conviction of a misdemeanor of the first degree or higher involving domestic violence creates a rebuttable presumption that shared parental responsibility is detrimental to the child. § 61.13(2)(c)3.a., Fla. Stat. (2024). The statute likewise requires a court to consider "evidence of domestic violence" in determining whether parental responsibility, a parenting plan, or a timesharing schedule is in the best interest of the child. § 61.13(3)(m), Fla. Stat. (2024).

In the present case, Former Husband was convicted of domestic violence battery against Former Wife pursuant to section 784.03(1), Florida Statutes (2021). Not only was Former Husband's domestic violence history discussed multiple times throughout the trial, but the parties also stipulated that Former Husband was convicted of domestic battery against Former Wife. The final judgment, however, is devoid of any suggestion that the trial court had considered Former Husband's domestic violence history, or the rebuttable presumption of detriment to the children, in making its parental responsibility and timesharing determinations. This was error. *See Ford v. Ford*, 700 So. 2d 191, 195–196 (Fla. 4th DCA 1997) (reversing the trial court's award of primary residential custody to father where court failed to analyze extensive evidence of domestic violence and abuse of mother and apparent misapplication of record evidence to the

best interest factors); *Smith v. Daniel*, 246 So. 3d 1279, 1281 (Fla. 1st DCA 2018) (reversing award of shared parental responsibility and supervised parenting time because, "[a]lthough the trial court did find that domestic violence occurred during the marriage because the father did not refute the mother's allegations of the violence, there is nothing in the final order suggesting that the trial court seriously considered this finding in carrying out its duty to determine the best interests of the child"); *see also Waybright v. Johnson-Smith,* 115 So. 3d 445, 447 (Fla. 1st DCA 2013) ("Domestic violence and other forms of violent behavior are probative matters in a child custody case.").

As the error permeated all aspects of the trial court's parenting plan, we are compelled to reverse not only the award of shared parental responsibility and equal timesharing, but the parenting plan in its entirety.

### 2. Alimony

Former Wife argues the trial court erred in awarding Former Husband durational alimony, as he failed to establish an actual need for alimony and was voluntarily unemployed.  We agree.

The trial evidence showed that both parties worked throughout the eight-year marriage.  Former Wife began working for her current employer, NextEra, in May 2011.  By the time of trial, Former Wife made a base annual salary of $180,000.  Former Husband, who has an accounting degree, began working for Florida Power & Light ("FPL") in 2017, earning $60,000 to $65,000 annually with benefits.  Former Husband was terminated from FPL in late January 2021 due to the underlying domestic violence conviction.  During the dissolution proceedings, and following his incarceration, Former Husband worked two full-time jobs at Indotronix and Hurricane Grill.  While working full-time at Indotronix in 2022, Former Husband earned $27 per hour for a forty-hour work week.  While working full-time at Hurricane Grill, Former Husband earned on average $16.13 per hour, for a net monthly amount of $2,775.

Former Husband admitted he voluntarily left his employment at Indotronix and Hurricane Grill to accept a job offer at Power Systems Mfg. paying $75,000 a year.  However, the job offer was revoked after Former Husband's background check revealed the domestic violence conviction. Former Husband testified he thereafter applied to "hundreds of companies, thousands of job positions" but claimed nothing panned out because of his criminal record.  Former Husband claimed he was unemployed as of the last day of trial. Regarding Former Husband's actual need for alimony, he testified at trial that he should be awarded $30,000

to $50,000 per year in alimony based on "the trajectory of [Former Wife's] career that [he] supported." Former Husband also testified he would need $2,500 to $4,000 per month to "maintain [the children's] current living situation and make it equal between the two parents." Finally, Former Husband claimed that if he didn't "get any money, [he was] going to end up in a halfway house."

Based on the above evidence, the trial court found Former Husband was unemployed, that he was unable to gain employment despite applying to numerous jobs, and that he was "limited to employment within the service industry, earning a maximum hourly income of $15 per hour." The trial court further found that "[Former] Husband's financial affidavit, dated February 6, 2023, [reflected] he has a gross monthly income of $1,128.80." Based on these findings, the trial court found Former Husband had a need for alimony and that Former Wife had the ability to pay based on her salary. The trial court accordingly awarded Former Husband monthly durational alimony of $4,703 for a period of fifty-two months.

Section 61.08, Florida Statutes (2024), governs alimony awards and provides that in determining whether to award alimony, the trial court must first make a specific factual determination as to whether one party has an actual need for alimony and whether the other party has the ability to pay alimony. § 61.08(2)(a), Fla. Stat. (2024). "The party seeking alimony has the burden to prove his or her financial need and the other party's ability to pay." *Odom v. Odom*, 312 So. 3d 1073, 1077 (Fla. 1st DCA 2021).

Several of the trial court's critical findings are not supported by competent substantial evidence. First, the final judgment reflects that in assessing Former Husband's need for alimony, the trial court used $15 per hour as Former Husband's income, for a gross monthly income of $1,128. This appears to be calculated at a part-time rate without explanation. However, Former Husband presented no evidence that he was unable to work full-time. *Cf. Rodriguez v. Medero*, 17 So. 3d 867, 870–71 (Fla. 4th DCA 2009) (reversing the trial court's finding that former wife was capable of working a full-time job where she presented unrefuted testimony that her medical conditions prevented her from working full-time and her employer was unable to schedule her to work forty hours per week or more); *Tarnawski v. Tarnawski*, 851 So. 2d 239, 242 (Fla. 4th DCA 2003) (holding trial court's imputing of income to former wife at $20 per hour for a forty hour work week was not based on substantial competent evidence where the most she earned before was $15 per hour part-time and no evidence was presented that work was available for forty hours per week). *See also McCants v. McCants*, 984 So. 2d 678, 682 (Fla. 2d DCA 2008) (holding that "meaningful appellate review is hampered by the

5

absence of findings as to how the trial court determined the income amount"). In fact, the evidence clearly established that Former Husband was able to work full-time. Former Husband's own evidence reflected he worked two full-time jobs following his incarceration and earned a monthly gross income of over $5,000. Significantly, the trial court entered an order in November 2022, prior to trial, denying Former Husband's request for temporary alimony because he was voluntarily underemployed. The order made specific findings imputing income to Former Husband in the amount of $5,763.33 per month as he had been gainfully employed with FPL before his incarceration and because he had voluntarily left employment at Indotronix and Hurricane Grill.

Second, aside from Former Husband's testimony that he wanted $30,000 to $50,000 per year in alimony, he did not present any evidence of what his actual need was at the time of trial or how the trial court made the alimony calculation which it awarded. Former Husband's financial affidavits do not reflect a financial need. His first financial affidavit, dated November 11, 2022, reports $1,535.20 in net monthly income and $1,533.74 in monthly expenses, with no deficit. Former Husband's second financial affidavit, dated February 6, 2023, reports $1,116 in net monthly income and $1,294 in monthly expenses, thus, a $178.00 deficit. Review of the record does not reflect that any evidence was presented as to Former Husband's monthly needs over and above what he had stated in his financial affidavits. *See Fortunoff v. Morris*, 197 So. 3d 128, 129–30 (Fla. 4th DCA 2016) (reversing award of temporary alimony for lack of competent substantial evidence where amount awarded exceeded the amount of expenses stated on husband's financial affidavit and where no other evidence was presented to justify the amount awarded); *Rosecan v. Springer*, 845 So. 2d 927, 929 (Fla. 4th DCA 2003) ("Absent special circumstances which do not appear in the judgment, an alimony award should not exceed a spouse's need.").

Finally, the trial court apparently based its alimony award largely on the parties' income disparity. The final judgment, when discussing the parties' standard of living and needs after dissolution, noted that even when Former Husband was working, "[Former] Wife continued to surpass [Former] Husband's income by earning substantially more" than Former Husband. However, "[a] trial court in a divorce proceeding is not required to equalize the financial positions of the parties." *Payne v. Payne*, 88 So. 3d 1016, 1017 (Fla. 2d DCA 2012) (citing *Canakaris v. Canakaris*, 382 So. 2d 1197, 1204 (Fla. 1980)); *see also Mills v. Johnson*, 147 So. 3d 1023, 1024–25 (Fla. 2d DCA 2014) (questioning the decision to base an alimony award "primarily on the fact that there is a disparity in the parties' income," noting that "[a] trial court in a divorce proceeding is not required

to equalize the financial position of the parties" (alteration in original) (quoting *Payne*, 88 So. 3d at 1017)).

Accordingly, we reverse the durational alimony award to Former Husband and remand to the trial court for reconsideration of Former Husband's need based upon the existing record. Consistent with our holding, the trial court shall not consider the parties' income disparity in determining Former Husband's need. *Rosecan*, 845 So. 2d at 930.

### 3. *Valuation of Marital Assets and Liabilities*

- Former Wife's Retirement Accounts

Former Wife argues the trial court erred in valuing her retirement accounts. We agree, in part.

The trial evidence established Former Wife had two retirement accounts: a NextEra 401(k) account and a NextEra pension account. Per the account statements introduced into evidence, at the time of filing the dissolution petition in 2021, the 401(k) account had a $209,927.79 balance (minus a $28,719.92 loan taken during the marriage) and the pension account had a $49,230.72 balance. At the time of trial in 2023, the 401(k) account had a $262,130.39 balance (minus a $2,206.64 loan) and the pension account had a $81,485.53 balance. The account statements reflect that from February 4, 2021, to October 23, 2023, Former Wife contributed $50,566.88 to the 401(k) account and her employer contributed $21,147.30 to the account. The account statements also reflect that during that same time period, Former Wife's 401(k) account realized $3,955.50 in gains and $6,919.76 in dividends. No evidence was adduced establishing the nonmarital value of the passive appreciation in Former Wife's 401(k) account. In the final judgment, the trial court used the final date of trial as the valuation date for Former Wife's retirement accounts without regard to Former Wife's active contributions after the filing date.

Section 61.076, Florida Statutes (2024), provides that "[a]ll vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs are marital assets subject to equitable distribution." § 61.076(1), Fla. Stat. (2024). "The cut-off date for determining whether an asset is marital or nonmarital is typically when the parties reach a valid separation agreement or the date the petition for dissolution of marriage is filed." *Duhamel v. Duhamel*, 385 So. 3d 209, 213 (Fla. 2d DCA 2024). "However, the trial court must determine what

date is just and equitable in each case, and '[d]ifferent assets may be valued as of different dates, as, in the judge's discretion, the circumstances require.'" *Id.* at 213–14 (citation omitted).

"When marital assets have appreciated due to the work efforts of either party since the filing date, the filing date should be used." *Parry v. Parry*, 933 So. 2d 9, 14 (Fla. 3d DCA 2006) (citation omitted). This is because "[t]he selection of a valuation date should not result in distributing an increase in a fund's value that is due to contributions made after the petition for dissolution is filed because such contributions are 'due to nonmarital efforts.'" *Duhamel*, 385 So. 3d at 214 (citation omitted). However, "[w]hen marital assets have appreciated passively since the filing date, the date of the final hearing generally should be used." *Parry*, 933 So. 2d at 14 (alteration in original) (citation omitted). In a situation, as here, when a retirement account includes both active contributions and passive gains after the petition for dissolution is filed, only the passive gains on the marital portion of the retirement account is subject to equitable distribution. *See Duhamel*, 385 So. 3d at 214 ("Each spouse has 'an interest in the marital part of the assets, and any passive accumulations thereon, through' the date of the final hearing." (citation omitted)); *see also Kincaid v. Kincaid*, 397 So. 3d 1169, 1176 (Fla. 5th DCA 2024) ("A precise valuation of the marital portion of the two new IRAs requires that the appreciation of the premarital portion be calculated separately from that of the marital portion.").

Here, Former Wife's retirement accounts reflect both active contributions and passive gains after the dissolution petition was filed. As no evidence was adduced establishing what portion of the passive gains were attributable to the marital part of the retirement accounts, the trial court had the discretion to use the date of trial in valuing the retirement accounts. *See Kincaid*, 397 So. 3d at 1176–77. However, the trial court erred in not excluding Former Wife's post-filing active contributions in valuing the retirement accounts.

- Former Husband's Retirement Accounts

Former Wife argues the trial court erred in failing to value and distribute Former Husband's retirement accounts. We agree.

The trial evidence established Former Husband had two retirement accounts: a NextEra 401(k) account and a NextEra pension account. At the time of filing, the 401(k) account had a $19,646.01 balance (minus a $1,934.82 loan taken during the marriage). At trial, Former Husband testified he had used all of the 401(k) funds to pay for "legal and living

8

expenses." While no evidence was presented regarding the pension account's balance when the dissolution action was filed, the record reflects that, as of May 31, 2022, the pension account's balance was $8,444.13.

The final judgment does not identify, value, or distribute Former Husband's retirement accounts. Nor does the final judgment address Former Husband's post-filing depletion of the 401(k) account. This was error. *See Tritschler v. Tritschler*, 273 So. 3d 1161, 1163 (Fla. 2d DCA 2019) ("A final judgment that fails to identify and value all of the parties' marital assets and liabilities and that fails to distribute them equitably between the parties must be reversed."). On remand, the trial court is to identify, value, and equitably distribute those accounts in the final judgment. As it does not appear that Former Husband made any post-filing active contributions to the retirement accounts, the date of trial shall be used in valuing those accounts.

- Retirement Account Loans

Former Wife argues the trial court erred in failing to value and distribute the marital loans associated with the parties' retirement accounts. We agree.

As noted above, when the dissolution action was filed, Former Wife's 401(k) account had a $28,719.92 marital loan balance and Former Husband's 401(k) account had a $1,934.82 marital loan balance. The final judgment, however, fails to identify, value, or distribute those liabilities, and fails to address the fact that Former Wife had repaid a substantial portion of the loan balance on her 401(k) through her post-filing contributions. This was error. *See Tritschler*, 273 So. 3d at 1163. On remand, the trial court is to identify, value, and equitably distribute the retirement account loans. In valuing the loans, the trial court shall use the date of filing.

- Marital Home

Former Wife argues the trial court failed to value the marital home and used the wrong valuation date in valuing the mortgage. We agree.

At trial, the parties stipulated that the marital home's current value was $530,000. The mortgage balance on the marital home was $240,323.18 at the time of filing, and $224,322.06 at the time of trial. In the final judgment, the trial court did not directly assign a value to the marital home but instead assigned it "a current net equity value of $305,678.00." Based on this calculation, the trial court apparently used

9

the $530,000 value to which the parties had stipulated at trial, and deducted from that amount the $224,322.06 mortgage balance at the time of trial. This was error, as the final judgment explicitly states the trial court shall use "the date of filing as the appropriate date for all liabilities." On remand, the trial court is to: (1) assign a value to the marital home; (2) use the mortgage balance at the time of filing; and (3) recalculate the marital home's net equity value based on those values.

### 4. Distribution of Marital Assets and Liabilities

Former Wife next argues the trial court failed to address several marital assets and liabilities, and incorrectly classified and distributed certain assets as marital. We address the individual assets and liabilities below.

- Vehicles

Former Wife argues the trial court failed to include a $14,843.19 marital lease debt for a Kia Niro vehicle, and incorrectly listed Former Wife's Kia Sorento vehicle as a marital asset. We agree.

Regarding the Kia Niro, the trial evidence established that the parties had co-leased the vehicle before their separation. Upon the parties' separation, Former Husband took the Kia Niro, yet failed to pay its outstanding lease debt. The trial evidence established that the Kia Niro's lease debt was $14,843.19 as of June 2023. Former Husband admitted at trial that he could be equally responsible for that debt. Former Husband also admitted that he withheld the Kia Niro from Former Wife, and that the vehicle was ultimately repossessed. The final judgment, however, failed to identify or distribute this marital liability. This was error. *See Tritschler*, 273 So. 3d 1161 at 1163. On remand, the trial court is to amend the final judgment to include the Kia Niro lease debt of $14,843.19 as a marital debt, and consider whether Former Husband should incur a greater percentage of the debt because of his failure to make the lease payments while the vehicle was in his exclusive possession.

Regarding the Kia Sorento, the trial evidence established that Former Wife had purchased the vehicle in February 2021, after the dissolution petition was filed. The final judgment, however, listed the Kia Sorento as a marital asset, valued it at $9,929, and awarded it to Former Wife as part of her equitable distribution award. This was error, as the Kia Sorento was purchased after the filing date and is therefore not a marital asset. *See* § 61.075(7), Fla. Stat. (2024) ("The cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is the earliest of the date the parties enter into a valid separation

agreement . . . or the date of the filing of a petition for dissolution of marriage."); *Knott v. Knott*, 395 So. 3d 1147, 1152 (Fla. 6th DCA 2024) (citing section 61.075(7) and holding that "a trial court may not classify an asset purchased after the filing of the petition as marital. This is a bright-line rule."); *Smith v. Smith*, 169 So. 3d 220, 221 (Fla. 2d DCA 2015) (vehicle purchased by husband after the dissolution action was filed, but before entry of final judgment, was not marital property for purposes of equitable distribution). On remand, the trial court is to amend the final judgment and remove the Kia Sorento as Former Wife's marital asset. The trial court shall not consider the Kia Sorento when reexamining its equitable distribution scheme. *See Knott*, 395 So. 3d at 1152.

- Contempt Fee

Former Wife argues the trial court failed to deduct a previously ordered contempt fee from Former Husband's equitable distribution award. We agree.

During the dissolution action, Former Husband was found in contempt and ordered to pay Former Wife $2,867.64 in attorney's fees, with that amount to be paid from Former Husband's equitable distribution share. The contempt fee is inconsistently listed as Former Husband's non-marital debt in the final judgment, and as Former Husband's marital debt in the equitable distribution schedule. On appeal, Former Husband agrees that the $2,867.64 contempt fee should be deducted from his equalization payment. Accordingly, we remand for the trial court to amend the final judgment to list the $2,867.64 contempt fee as Former Husband's marital debt and deduct that amount from Former Husband's equitable distribution share.

- Social Investigation Fee

Former Wife argues the trial court failed to deduct $7,500 from Former Husband's equitable distribution award as his share of the social investigation fee. We agree with Former Wife that the trial court erred in failing to deduct Former Husband's share of the fee from his equitable distribution award, but disagree with Former Wife as to the amount which Former Husband owes.

During the dissolution action, the trial court appointed a psychologist to perform a social investigation. The trial court ordered that "[t]he $5,000 initial retainer . . . be paid by the Wife initially" and "[a]ny subsequent fees . . . be equally shared by the parties." Former Wife paid the $5,000 retainer fee as ordered. The trial court later entered an agreed order directing

Former Wife to pay "the entirety of fees associated with the social investigation through completion" and that "[Former] Husband's share will be paid out of his equitable distribution." At trial, Former Wife testified, without objection, that she had paid a total of $15,000 in fees associated with the social investigation.

Notwithstanding the previous orders and Former Wife's testimony, the final judgment failed to address reimbursement of the social investigation fee. This was error. As the original order unconditionally required Former Wife to pay the initial $5,000 retainer and that the parties equally share only "[a]ny subsequent fees," and as the subsequent agreed order did not modify that requirement, Former Wife is entitled to be reimbursed only half of the additional $10,000. Accordingly, we remand for the trial court to amend the final judgment by deducting $5,000 from Former Husband's equitable distribution award.

- Marital Home

Former Wife next argues the trial court erred in awarding the marital home to Former Husband. We agree, but not for the reasons argued by Former Wife.

In awarding Former Husband the marital home, the trial court considered whether the home "would be a suitable place to provide for the [Former] Husband and two minor children." The trial court also ordered that the home's value "be offset against the [Former] Wife's retirement accounts," with the difference between the two being "shared equally between the parties." The trial court also ordered Former Husband to "pay the mortgage for the marital home from the alimony received from Former Wife."

In light of our reversal on the award of shared parental responsibility and equal timesharing, alimony to Former Husband, valuation of the retirement accounts, and distribution of various marital assets and liabilities, we are compelled to reverse the award of the marital home to Former Husband, as our reversal on those other issues will necessarily require the trial court to reexamine the overall property distribution and recalculate the parties' equitable distribution.

- Miscellaneous Accounts

Former Wife argues several inconsistences exist in the distribution of the accounts listed in the final judgment's paragraphs C, D, E, H, K, L, M, and O. We affirm on this issue without further comment.

- Personal Property

Finally, Former Wife argues the final judgment fails to identify and distribute certain personal property within the marital home, including household furnishings, paintings, and pets. Our review of the record leads us to conclude these issues were not properly raised for the trial court's ruling. We accordingly affirm on this issue.

### 5. *Entitlement to Attorney's Fees and Costs*

Former Wife argues the trial court erred in failing to reserve jurisdiction in the final judgment to consider Former Wife's entitlement to attorney's fees and costs. We agree.

Former Wife requested an attorney's fees award in her answer to the dissolution petition. In a March 2023 motion for contempt, Former Wife also sought sanctions by way of attorney's fees and costs for Former Husband's noncompliance with pretrial orders. The trial court reserved ruling on the motion for sanctions. Although the matter was supposed to proceed to a hearing, no subsequent hearing occurred. At the trial's end, when asked by the trial court if any other matters were pending, Former Wife's attorney stated, "[w]ell obviously, we're just reserving on attorney's fees at this point." Former Husband's attorney agreed, stating "[t]he reasonableness. And we're done."

Notwithstanding these representations, the trial court did not reserve jurisdiction in the final judgment to consider Former Wife's entitlement to attorney's fees and costs. This was error. *See Singer v. Singer*, 211 So. 3d 154, 154 (Fla. 4th DCA 2017) (finding "the trial court erred in failing to reserve jurisdiction in the final order to consider the former wife's entitlement to attorney's fees" where the trial court "expressed an intention to reserve ruling and the parties did not object to the reservation").

We reverse and remand for the trial court to amend the final judgment to reserve jurisdiction to address Former Wife's entitlement to attorney's fees and costs. *Flores v. Flores*, 82 So. 3d 838, 839 (Fla. 4th DCA 2011).

## Conclusion

In conclusion, we reverse on the following grounds, and remand to the trial court for further proceedings consistent with this opinion:

- Reverse the final judgment's finding of shared parental responsibility and equal timesharing and remand for the trial court to: (1) properly address Former Husband's domestic violence conviction, and the rebuttable presumption that shared parental responsibility is detrimental to the minor children; and (2) evaluate Former Husband's domestic violence in weighing the best interest of the minor children. After making the appropriate determination of those issues, the trial court shall also enter a new parenting plan.

- Reverse the durational alimony award to Former Husband and remand for reconsideration of Former Husband's need based upon the existing record.

- Amend the final judgment to exclude Former Wife's post-filing contributions in valuing the retirement accounts. The equitable distribution schedule shall be amended to reflect the same.

- Amend the final judgment to identify, value, and distribute Former Husband's retirement accounts, and consider Former Husband's post-filing depletion of the 401(k) balance. The equitable distribution schedule shall be amended to reflect the same.

- Amend the final judgment to identify, value, and distribute the marital loans associated with the parties' retirement accounts, and use the date of filing as the valuation date. The equitable distribution schedule shall be amended to reflect the same.

- Amend the final judgment to assign a value to the marital home, use the mortgage balance at the time of filing, and recalculate the marital home's net equity value based on those values. The equitable distribution schedule shall be amended to reflect the same.

- Amend the final judgment to: (1) include the Kia Niro's $14,843.19 lease debt as the parties' marital debt; (2) remove the Kia Sorento's $9,929 value as Former Wife's marital asset; (3) include the $2,867.64 contempt fee as Former Husband's marital debt, to be deducted from Former Husband's equitable distribution; and (4) deduct $5,000 from Former Husband's equitable distribution as his share of the social investigation fee. The equitable distribution schedule shall be amended to reflect the same.

- Reverse the award of the marital home to Former Husband and recalculate the parties' equitable distribution scheme in considering the

14

marital home award.  The equitable distribution schedule shall be amended to reflect the same.

• Amend the final judgment to reserve jurisdiction to address Former Wife's entitlement to attorney's fees and costs.

*Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.*

MAY and LEVINE, JJ., concur.

*      *      *

***Not final until disposition of timely filed motion for rehearing.***